**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| League of Women Voters of Minnesota Education Fund and Vivian Latimer Tanniehill, | Civil No. 0:20-cv-01205 (ECT/TNL) |
| Plaintiffs, | |
| v. | **DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE** |
| Steve Simon, in his official capacity as Secretary of State of Minnesota, | |
| Defendant. | |

**INTRODUCTION**

Defendant, the Secretary of State, opposes the motion to intervene filed by Donald J. Trump for President, Inc., the Republican National Committee, and the Republican Party of Minnesota (collectively, "Proposed Intervenors") because Proposed Intervenors have not demonstrated a viable basis to participate in this litigation as a party under the standard for either mandatory or permissive intervention in Federal Rule of Civil Procedure 24.

Proposed Intervenors' request for mandatory intervention under Rule 24(a) should be denied because they cannot satisfy the requirements of that rule. First, Proposed Intervenors' request for intervention is untimely. They waited to file their motion for intervention in this time-sensitive case involving election laws that govern voting for the August 2020 primary that will be begin on June 26, 2020 until *after* the original parties had negotiated and signed a consent decree and sought approval from the court for that

decree. Second, Proposed Intervenors' claimed interest in the general integrity of Minnesota elections is not a recognized interest in the subject matter of the litigation sufficient to support intervention under Rule 24(a). Third, because the Secretary has already begun implementing the partial consent decree in order to comply with a ruling from the Ramsey County District Court, any interests of Proposed Intervenors will not be impaired by disposition of *this* case. Finally, Proposed Intervenors have failed to meet their substantial burden of demonstrating that the Secretary's representation of their interests is inadequate.

Proposed Intervenors' request for permissive intervention fails for many of the same reasons. Additionally, the Court should exercise its discretion to deny permissive intervention because the proposed intervention will only cause delay and prejudice to the original parties in this litigation where expeditious resolution is imperative. For these reasons, the Secretary respectfully requests that the Court deny Proposed Intervenors' motion for intervention in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action on May 19, 2020 challenging the constitutionality of Minn. Stat. § 203B.07, which requires that, to vote by absentee ballot, a Minnesota voter must fill out his or her ballot in the physical presence of a witness and have the witness sign a certificate. (Dkt. 1.) Minn. Stat. § 203B.07 also requires that the witness be registered to vote in Minnesota or be a notary public or other individual authorized to administer oaths. In their Complaint, Plaintiffs allege that enforcement of this Witness

2

Requirement during the COVID-19 pandemic unconstitutionally burdens the right to vote and denies certain Minnesota voters equal protection. (*See* Dkt. 1 ¶¶ 93-112.)

On May 29, 2020, Plaintiffs moved for a preliminary injunction, seeking to enjoin enforcement of the Witness Requirement for both the August Primary and November General Elections. (Dkts. 13, 15.) On June 9, 2020, the Secretary filed an answer. (Dkt. 22.) Thereafter, the parties met and conferred regarding the pending motion for preliminary injunction. As set forth in more detail in Defendant's accompanying Memorandum of Law in Response to Proposed Intervenors' Objections to Partial Consent Decree, following arms' length negotiations, the parties entered into a partial consent decree whereby the Secretary agreed not to enforce the Witness Requirement for the August Primary with respect to registered voters. On June 16, 2020, that consent decree was filed with the Court. (Dkt. 24.)

A similar consent decree was filed that same day in Ramsey County District Court, in a lawsuit bringing similar claims regarding the Witness Requirement that has been pending since May 13, 2020. The Ramsey County District Court judge approved that consent decree (the "*LaRose* consent decree"), pursuant to which the Secretary has agreed not to enforce the Witness Requirement for purposes of the August Primary.

Four days after the partial consent decree was filed with this Court, Proposed Intervenors filed their motion seeking intervention. (Dkt. 37.)[1]

---

[1] Proposed Intervenors have now sought to intervene in the Ramsey County District Court action. Their motion for intervention in those proceedings was filed after the
(Footnote Continued on Next Page)

# ARGUMENT[2]

"The Supreme Court has often emphasized that a lawsuit in federal court is not a forum for the airing of interested onlookers' concerns, nor an arena for public-policy debates." *Mausolf v. Babbit*, 85 F.3d 1295, 1301 (8th Cir. 1996). Thus, "[w]hile Rule 24 promotes judicial economy by facilitating, where constitutionally permissible, the participation of interested parties in others' lawsuits, the fact remains that a federal case is a limited affair, and not everyone with an opinion is invited to attend." *Id.* Even a cursory review of Proposed Intervenors' motion demonstrates that they seek to use Rule 24 solely for an improper purpose—to engage in a public-policy debate regarding the best means to ensure the integrity of Minnesota elections. Proposed Intervenors' last-minute effort to thwart the impact of a negotiated consent decree that has already been entered by a state court judge, on the eve of an election, during the midst of a global pandemic, fails to satisfy the requirements of either mandatory or permissive

---

(Footnote Continued from Previous Page)
Ramsey County District Court approved and entered the *LaRose* consent decree and remains pending. (*See* Dkt. 28-1.)

[2] As set forth in Defendant's Memorandum of Law in Response to Proposed Intervenors' Objections to Partial Consent Decree, the Court should consider the mootness arguments raised therein before considering the motion to intervene. Because Proposed Intervenors seek intervention based on Plaintiffs' requested relief related to the August Primary, which is now moot, the Court need not reach the merits of Proposed Intervenors' motion to intervene. *See, e.g.*, *Jou v. Kimberly-Clark Corp.*, No. 13-CV-03075-JSC, 2015 WL 4537533, at *2 (N.D. Cal. July 27, 2015) (court lacked subject matter jurisdiction to consider motion to intervene where stipulated dismissal divested the court of jurisdiction over the case, and there was no live case or controversy into which the party could intervene).

intervention. Accordingly, the Secretary respectfully requests that the motion to intervene be denied.

**I.  PROPOSED INTERVENORS ARE NOT ENTITLED TO MANDATORY INTERVENTION.**

A party seeking mandatory intervention under Federal Rule of Civil Procedure 24(a) must make a timely application for intervention and establish that "(1) it has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by the existing parties." *S.D. ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003); Fed. R. Civ. P. 24(a).

**A.  Proposed Intervenors' Request For Intervention Is Untimely.**

If a motion for intervention is not timely filed, "the applicant is barred from intervening." *United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995). "The timeliness of a motion to intervene is determined from the totality of the circumstances." *Winbush v. State of Iowa by Glenwood State Hosp.*, 66 F.3d 1471, 1479 (8th Cir. 1995). In determining whether a motion for intervention is timely, courts consider four factors, including, (1) "how far the litigation has progressed at the time of the motion for intervention"; (2) "the prospective intervenor's prior knowledge of the pending action"; (3) "the reason for the delay in seeking intervention"; and (4) "the likelihood of prejudice to the parties in the action." *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010). Consideration of these factors demonstrates that Proposed Intervenors' motion for intervention is untimely.

5

First, although this litigation has not been pending for a significant period of time, the litigation had substantially progressed by the time the Proposed Intervenors brought their motion for intervention. *See Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985) (affirming denial of motion for intervention filed only twelve days after commencement of the lawsuit where "because of the expedited nature of the proceedings, a substantial amount of the litigation had been completed during these twelve days"); *Winbush*, 66 F.3d at 1479 (noting the relevant inquiry is "the status of the proceedings at the time of the motion" for intervention). When Proposed Intervenors filed their motion, Plaintiffs had filed their complaint as well as a motion for a preliminary injunction. The Secretary had answered. And—most importantly—by the time Proposed Intervenors filed their motion for intervention the parties had already negotiated, agreed to, and sought Court approval of a consent decree that resolves Plaintiffs' claims in their entirety with respect to the conduct of the August Primary.

The circumstances of this case are therefore distinguishable from those in the cases cited by Proposed Intervenors where motions for intervention were deemed timely where no consent decrees were at issue and the motions were filed before significant proceedings had occurred. *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (finding motion for intervention filed after court resolved motion for judgment on the pleadings timely and noting the parties did "not contest timeliness of the" motion); *Planned Parenthood Minn., N.D., S.D. v. Daugaard*, 836 F. Supp. 2d 933, 940 (D.S.D. 2011) (motion for intervention timely less than a month after complaint was filed and immediately after court granted motion for preliminary injunction but no consent decree

had been filed); *S. D. Farm Bureau, Inc. v. South Dakota*, 189 F.R.D. 560, 563 (D.S.D. 1999) (motion for intervention timely where "only a complaint and answer had been filed").³ Indeed, the only cases cited by Proposed Intervenors that actually involved consent decrees support denial of their motion as untimely. In *United States v. Union Electric Company*, 64 F.3d 1152, 1159 (8th Cir. 1995) the court found a motion for intervention timely where it was filed three months ***prior*** to the original parties' motion for entry of the consent decree, not several days after as Proposed Intervenors did here. Similarly, in *United States EPA v. City of Green Forest, Arkansas*, 921 F.2d 1394, 1402 (8th Cir. 1990) the Eighth Circuit affirmed the district court's denial of a motion to intervene brought after a consent decree was filed.⁴

Second, it is undisputed that Proposed Intervenors had knowledge of the litigation and their supposed interest in it. Proposed Intervenors themselves point to the news

---

³ The same is true of the other COVID-19 related election law challenges Proposed Intervenors cite. Those cases also allowed intervention sought at an early stage, not after the filing of a consent decree. *See, e.g.*, *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020) ("Both the *Issa* and *RNC* Plaintiffs filed their Complaints on May 21 and 24, 2020, respectively, and the Proposed Intervenors filed the Motions to Intervene on June 3, 2020. To date, no substantive proceedings have occurred . . . ."); *Priorities USA v. Nessel*, Case No. 19-13341, 2020 WL 2615504, at *3 (E.D. Mich. May 22, 2020) (finding motions to intervene timely that were filed "while this case was still in its pleading stages, before the briefing on plaintiffs' motion for preliminary and permanent injunction and Nessel's motion to dismiss was complete"); *Paher v. Cegavske*, No. 320CV00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) ("Proposed Intervenors moved for intervention within six days from the filing of the action and before the reply brief in support of Plaintiffs' motion for preliminary injunction is due. . . .").

⁴ The Eighth Circuit ultimately remanded on the issue of intervention, but solely for "the limited purpose of permitting the citizens group to seek attorneys' fees." 921 F.2d at 1402.

coverage received by the litigation. (Dkt. 41 at 2.) And as the basis for their objections to the partial consent decree, Proposed Intervenors describe at length how closely they have followed the efforts of Democrats to change voting requirements in Congress and the Minnesota Legislature as well as the Secretary's role in those efforts. (*See, e.g.*, Dkt. 41 at 1.) Despite knowing of the litigation, however, Proposed Intervenors made the choice to wait and see what would happen and only chose to intervene after the parties filed a consent decree with which Proposed Intervenors did not agree. This is not an explanation for delay sufficient to satisfy the timeliness requirement of Rule 24(a). In *Dalton v. Barrett*, No. 2:17-CV-04057, 2019 WL 3069856, at *3 (W.D. Mo. July 12, 2019), for example, the court found a motion for intervention untimely where the Attorney General did not seek to intervene "until a day after the motion for entry of the consent judgment was filed." Like Proposed Intervenors here, the Attorney General argued in *Dalton* that "he did not intervene sooner because he did not know until he saw the proposed consent judgment that the parties would enter into a settlement agreement that would be adverse to the State and its Attorney General." *Id.* The court, however, rejected that argument explaining that "the relevant question is when he would have been on notice that there was a risk that his interests would not be adequately protected by the MSPD Defendants." *Id.*

Although the Secretary maintains that he has been an adequate representative throughout this litigation, Proposed Intervenors apparent bases for believing he is not long pre-date the June 16 filing of the partial consent decree. For example, Proposed Intervenors insinuate inadequate representation and collusion because the Secretary made

8

efforts to get legislation passed that would relax absentee-voting rules and is "a member of the League of Women Voters." (Dkt. 41 at 27.) Because Proposed Intervenors were aware of the facts that they now contend make the Secretary an inadequate representative, there was no reason for them to wait until the consent decree was filed before seeking to intervene to protect their own asserted interests. *See Floyd v. City of N.Y.*, 770 F.3d 1051, 1059 (2d Cir. 2014) (finding intervention untimely where proposed intervenors "should have know that their interests *might* not be adequately represented" in advance of settlement); *Patriot Party of Pa. v. Mitchell*, No. Civ. A. 93-2257, 1993 WL 466522, at *3 (E.D. Pa. Aug. 17, 1993) (finding motion to intervene untimely where Republican Party was aware of the proceeding but took a "'wait and see' approach").

      Finally, the likelihood of prejudice to Plaintiffs and the Secretary if Proposed Intervenors' motion is granted is significant and weighs in favor of finding Proposed Intervenors' motion to be untimely. Courts routinely hold that "[o]nce parties have invested time and effort into settling a case it would be prejudicial to allow intervention." *State v. City of Chicago*, 912 F.3d 979, 986-87 (7th Cir.), *cert. denied sub nom. Fraternal Order of Police Chicago Lodge No. 7 v. Illinois*, 140 S. Ct. 82 (2019); *see also R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 9 (1st Cir. 2009) ("By the time that Doral moved to intervene, the original parties had forged a settlement of their dispute. Because Doral's proposed intervention was aimed at disrupting that settlement, the harms that intervention would have worked to the original parties was manifest."); *Hollywood Community Synagogue, Inc. v. City of Hollywood, Fla.*, 254 F. App'x 769, 771 (11th Cir. 2007) (affirming denial of motion for intervention as untimely when filed

one day prior to the district court's approval of a consent decree); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 72 (2d Cir. 1994) ("We have observed that jeopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit."); *Minor I Doe ex rel. Parent I Doe v. Sch. Bd. for Santa Rosa Cnty., Fla.*, 264 F.R.D. 670, 688-89 (N.D. Fla. 2010) ("[R]arely will a motion to intervene be deemed timely where the proposed intervention seeks to undo settlement negotiations that have already culminated in a consent decree."). Here, Plaintiffs and the Secretary have negotiated the terms of a partial consent decree that the Secretary has already begun to put in place pursuant to the Ramsey County District Court ruling. That partial consent decree resolves Plaintiffs' motion for preliminary injunction with respect to the August Primary and allows the Secretary time to administer absentee voting consistently for that election. Proposed Intervenors' efforts to upset those negotiations and undermine the certainty afforded by the partial consent decree should be rejected.

      **B.**     **Proposed Intervenors Do Not Have A Recognized Interest In the Subject Matter Of The Litigation.**

Proposed Intervenors claim a recognized interest in the litigation based on their interest in the "continued enforcement of state laws governing witness requirements, absentee ballots, and voter identification, as those laws are designed to serve the integrity of [the] election process." (Dkt. 38 at 7.) More specifically, Proposed Intervenors explain that they have an interest in the litigation regarding the challenge to the Witness Requirement because "Movants' candidates actively seek [election or] reelection in contests governed by the challenged rules." (*Id.*) But a recognized interest in the subject

10

matter of the litigation sufficient to support mandatory intervention under Rule 24(a) must rise to the level of "a legally protectable interest." *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999). Interests that are "speculative" are insufficient; they must be "direct, substantial and legally protectable." *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998). Similarly, "[a]n undifferentiated generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *Dalton v. Barrett*, No. 2:17-CV-04057, 2019 WL 3069856, at *4 (W.D. Mo. July 12, 2019).

Proposed Intervenors' asserted interest is simply a perceived partisan interest in maintaining what they believe to be a favorable landscape in Minnesota's elections—regardless of whether voters and Plaintiffs' fundamental rights may be violated by restrictions within that landscape in the context of COVID-19. In other words, unlike Plaintiffs, Proposed Intervenors do not claim that their own legally protectable constitutional rights would be violated if the Witness Requirement is not enforced. Instead, they claim only a preference for their candidates to seek election or reelection where all Minnesota absentee voters must be physically present before a witness in order to complete their August Primary ballot.[5] Taken to its logical conclusion, Proposed

---

[5] To be clear, the interest asserted by Proposed Intervenors is based on nothing more than a ***perceived*** partisan advantage. The partial consent decree applies equally to all Minnesota voters who choose to vote absentee by eliminating the requirement of finding a witness. Nor does the partial consent decree alter the voting landscape in a manner that prejudices any voters. Voters remain free to vote in person and voters remain equally free to complete their absentee ballots in the presence of a witness. Proposed Intervenors
(Footnote Continued on Next Page)

11

Intervenors' argument would mean that any political party, any organization involved in supporting candidates, or even anyone who votes would be entitled to intervene as of right in any lawsuit impacting an election or voting right.

Proposed Intervenors rely upon *Issa v. Newsom*, No. 220CV01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020), but that case actually highlights the generalized nature of the Proposed Intervenors' interest asserted here. In *Issa*, plaintiffs sought to enjoin an executive order implementing all-mail balloting in a California election. Democratic committees and campaigns moved to intervene citing as protectable interests, among others "asserting the rights of their members to vote safely without risking their health" and "advancing their overall electoral prospects." *Id.* Here, Proposed Intervenors do not assert that the voting rights of any of their members will be burdened. In fact, the relief sought in this litigation does not force any voter to change the way they wish to vote. Voters in Minnesota, including those who will vote for Republican candidates, can still vote in person. And they can also still choose to complete an absentee ballot in front of and have it be certified by a witness. Nor do Proposed Intervenors assert that relaxation of the Witness Requirement will make it harder for Republican candidates to be elected.[6] Accordingly, Proposed Intervenors have failed to assert a recognized interest

---

(Footnote Continued from Previous Page)
have presented no evidence that a relaxation of the Witness Requirement somehow disadvantages their candidates.

[6] The other cases cited by Proposed Intervenors are similarly inapposite. In *Citizens United v. Gessler*, No. 14-cv-002266, 2014 WL 4549001 (D. Colo. Sept. 15, 2014) the parties did not dispute the proposed intervenors' interest in the litigation and instead
(Footnote Continued on Next Page)

12

in the particular subject matter of this lawsuit—which entails only a challenge to the enforcement of the Witness Requirement—sufficient to support mandatory intervention.

### C. Any Interest Of Proposed Intervenors Cannot Be Impaired By Disposition Of This Case.

Even if Proposed Intervenors had identified an interest warranting mandatory intervention, their motion still fails because they cannot identify any impairment by disposition of *this* case. Proposed Intervenors assert impairment of their interests on the basis that "[i]f this court enters the consent decree, then the rules surrounding absentee ballots will be upended just weeks before the August primary" and claim that due to the expedited nature of elections "this proceeding might be the only time that Movants can litigate the consent decree." (Dkt. 38 at 8-9.) But Proposed Intervenors' argument fundamentally ignores this Court's role and their own role with respect to the partial consent decree and enforcement of the Witness Requirement.

---

(Footnote Continued from Previous Page)
disputed intervention on other grounds. Moreover, *Citizens United* involved a challenge to Colorado's disclosure and reporting scheme that the political party used to develop strategy, learn who was speaking about its candidates, and determine how to formulate responses, none of which are analogous to the interests asserted by Proposed Intervenors here. *Shays v. Federal Election Commission*, 414 F.3d 76, 88 (D.C. Cir. 2005) did not involve intervention at all. Instead, *Shays* found that two individual candidates had standing where the at-issue campaign finance restrictions would "harm Shays's and Meehan's electoral prospects." *Id.* As for *Ohio Democratic Party v. Blackwell*, No. 04-CV-1055, 2005 WL 8162665 (S.D. Ohio Aug. 26, 2005), Proposed Intervenors fail to mention that no party opposed intervention in that case, the court concluded that it was "debatable whether the Ohio Republican Party has an interest in the outcome of the case which differs from the interest of either the Ohio Secretary of State or the respective County Boards of Elections," and ultimately the court granted only permissive, not mandatory, intervention. *Id.* at *2.

First, tellingly absent from Proposed Intervenors' motion for intervention is any mention of the Ramsey County District Court action, in which Judge Grewing has already entered a consent decree pursuant to which the Secretary has agreed not enforce the Witness Requirement for the August Primary. As set forth in the Secretary's accompanying Memorandum of Law in Response to Proposed Intervenors' Objections to Partial Consent Decree, the existence of the *LaRose* consent decree—and the fact that the Secretary has already begun taking action to effectuate it—moots Plaintiffs' claims for relief with respect to the August Primary. The *LaRose* consent decree also moots Proposed Intervenors' request for intervention because it is based on a purported injury that will be caused if "this court enters the consent decree." (Dkt. 38 at 8.) But that "injury" has already occurred—the "rules surrounding absentee ballots" have already been changed due to operation of the *LaRose* consent decree. Thus, Proposed Intervenors' intervention in this lawsuit will do nothing to protect the interests they claim are being impaired. *See Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 266 (D. Minn. 2017) (noting that "the Eighth Circuit requires that prospective Rule 24(a) intervenors demonstrate the existence of an Article III case or controversy.").[7]

---

[7] In addition to mooting the basis for Proposed Intervenors' motion, the *LaRose* consent decree deprives them of the standing they must show in order to intervene. *See United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009). "To show Article III standing, a [party] has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). At a minimum, Proposed Intervenors cannot show that any injury "likely will be redressed by a favorable decision," because even if the Court declines to enter the partial consent decree, the Secretary is still bound by the
(Footnote Continued on Next Page)

Second, contrary to Proposed Intervenors' unsupported assertion, denying intervention would not impair their interests because even if they are allowed to intervene "they would not be able to block entry of the consent decree." *D.C. v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 233-34 (D.D.C. 2011); *see also United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996) ("[I]t is well settled that the right to have its objections heard does not, of course, give the intervenor the right to block any settlement to which it objects."). Here, Proposed Intervenors have already had the opportunity to be heard with respect to their objections to the partial consent decree, including through their submission of a 35-page brief in which they set forth those objections in detail. Intervention will not provide Proposed Intervenors with any additional rights vis-à-vis the partial consent decree. *See Potomac Elec. Power Co.*, 826 F. Supp. 2d at 234 (denying intervention where proposed intervenors "will be able to present their critiques of the consent decree to the Court and because they could not block the consent decree even if intervention were granted"); *see also Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991) (finding no prejudice from denying motion for intervention where complained-of preliminary injunction "would presumably remain in effect if intervention were granted").

---

(Footnote Continued from Previous Page)
*LaRose* consent decree not to enforce the Witness Requirement for the August Primary. *See Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011) (determining redressability factor was met because applicants' alleged injury, impairment of religious freedom, would be redressed by a judicial determination).

15

### D.     Proposed Intervenors' Interests Are Adequately Represented.

Finally, Proposed Intervenors' request for intervention fails because their interests are adequately represented by the Secretary. Proposed Intervenors claim that they bear only a "minimal burden of showing that [their] interests are not adequately represented by the parties." (Dkt. 38 at 10.) But the Eighth Circuit has repeatedly presumed that defense of a lawsuit by a state official is adequate as a matter of law "because in such cases the government is presumed to represent the interests of all its citizens." *N.D. ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015); *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996). This presumption of adequacy can be rebutted only "by a showing that the applicant's interest cannot be subsumed within the shared interests of the citizens." *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996).

Here, Proposed Intervenors do not seriously dispute that the Secretary shares their asserted interests in ensuring the integrity of the election process, ensuring voters can cast ballots "with confidence and without confusion," and "preventing fraud and the appearance of fraud in elections." (Dkt. 38 at 6-7.) Instead, Proposed Intervenors claim inadequacy of representation based solely on the Secretary's decision to enter into a partial consent decree instead of litigating the motion for preliminary injunction with respect to the August Primary on the merits. "It is not sufficient," however, "that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests." *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004). Accordingly, courts have explained that the existence of a consent decree alone is not sufficient to establish inadequate representation. *See Dalton*

*v. Barrett*, No. 2:17-CV-04057, 2019 WL 3069856, at *8 (W.D. Mo. July 12, 2019) (finding no inadequacy of representation where parties entered into proposed consent decree); *Com. of Pa. v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976) (consent decree did not establish inadequate representation, explaining "[t]hat (intervenors) would have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that the (defendants) did not adequately represent their interests in the litigation").

## II. PROPOSED INTERVENORS ARE NOT ENTITLED TO PERMISSIVE INTERVENTION.

"The decision to grant or deny a motion for permissive intervention is wholly discretionary." *S.D. ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003); Fed. R. Civ. P. 24(b). In deciding whether to grant permissive intervention, courts consider "(1) whether the motion to intervene is timely; (2) whether the applicant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights." *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *S.D. ex rel. Barnett*, 317 F.3d at 787. Here, in addition to being untimely for the reasons explained above, *supra* § I.A., Proposed Intervenors' request for permissive intervention should be denied because it threatens to inject delay into time-sensitive proceedings and prejudice the original parties by undermining the benefit of having entered into a partial consent decree. *See, e.g.*, *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012)

(denying permissive intervention because it would cause delay, unnecessary complication, and because the interests of the intervenor were adequately represented); *Nat'l Parks Conservation Ass'n v. U.S. Envt'l Prot. Agency*, No. CV 12-3043, 2013 WL 12074954, at *12 (D. Minn. May 28, 2013) (denying permissive intervention when the third-party lacked standing, had only speculative injury, and their interests were adequately represented by the government).

Absentee voting for the August Primary begins on June 26, 2020. Although Proposed Intervenors were aware of that timeline, they chose to wait to bring a motion for intervention until June 20. Further delay occasioned by the proposed intervention—not the partial consent decree—threatens to undermine the certainty of the rules applicable to absentee voting for the August Primary. Under similar circumstances, courts deny requests for permissive intervention. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. N.Y.*, 413 U.S. 345, 369 (1973) ("[I]n view of the then rapidly approaching primary elections in New York . . . the granting of a motion to intervene possessed the potential for seriously disrupting the State's electoral process . . . ."); *Serv. Employees Int'l Union Local 1 v. Husted*, 515 F. App'x 539, 541-42 (6th Cir. 2013) (noting that due to the approaching November election "[a]llowing the applicants' intervention will prejudice the existing parties and will inhibit, not promote, a prompt resolution"); *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 259 (D.N.M. 2008) (denying permissive intervention where "the deadline for book-closing

preceding the general election is fast approaching" and therefore it was "important to avoid any unnecessary delays").[8]

Intervention here will do nothing more than potentially delay the Secretary's ability to administer Minnesota's elections while ensuring that voting regulations are applied consistently. *See, e.g.*, *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (denying intervention that would "upset the delicate balance achieved" by consent decree); *D.C. v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 236-37 (D.D.C. 2011) (denying intervention where it would "undermine part of the benefit of entering into a consent decree" including implementing the remedy "expeditiously"); *United States v. Mid-State Disposal, Inc.*, 131 F.R.D. 573, 576-77 (W.D. Wis. 1990) (denying intervention where it would "render the negotiations between the original parties a waste of time and stall the implementation of the remedy designed to benefit the public health and safety").

## CONCLUSION

Based on the foregoing, the Secretary respectfully requests that the Court deny Proposed Intervenors' motion to intervene in its entirety.

---

[8] The expedited timeline for this election law challenge differs markedly from the circumstances in *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017), which Proposed Intervenors cite repeatedly as a basis for permissive intervention. When intervention was sought in *Franconia*, the case was "in its earliest stages." *Id.* Moreover, the case was proceeding on a timeframe for typical civil litigation. Therefore, *Franconia Minerals* has no bearing on the propriety of intervention in a case like the present one where the at-issue statutes impact an election that begins in four days.

| | |
|---|---|
| Dated: June 22, 2020 | **s/ Hillary A. Taylor** |
| | JASON MARISAM (#0398187) |
| | CICELY R. MILTICH (#0392902) |
| | HILLARY A. TAYLOR (#0398557) |
| | Assistant Attorneys General |
| | |
| | 445 Minnesota Street, Suite 1100 |
| | St. Paul, Minnesota  55101-2128 |
| | (651) 757-1275 (Phone) |
| | (651) 282-5832 (Fax) |
| | jason.marisam@ag.state.mn.us |
| | cicely.miltich@ag.state.mn.us |
| | hillary.taylor@ag.state.mn.us |
| | |
| | ATTORNEYS FOR DEFENDANT |
| | SECRETARY OF STATE STEVE SIMON |