## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

League of Women Voters of Minnesota
Education Fund, Vivian Latimer
Tanniehill,

Civil No. 0:20-cv-01205 (ECT/TNL)

Plaintiffs,

v.

Steve Simon, in his official capacity as
Secretary of State of Minnesota,

Defendant.

**DEFENDANT'S MEMORANDUM OF
LAW IN RESPONSE TO PROPOSED
INTERVENOR'S OBJECTIONS TO
PARTIAL CONSENT DECREE**

## INTRODUCTION

The context for the partial consent decree before the Court is not partisan politics, as Proposed Intervenors portray it, but instead a global pandemic and the health of Minnesota voters.  Over the past few months, Minnesota has been responding to the COVID-19 public health crisis, which has affected almost every sector and situation, including elections.  While the State has been under Peacetime Emergency executive powers and orders, the State has partnered with entities to ramp up testing, acquire personal protective equipment ("PPE") and ventilators, and make ICU beds available.  The danger has not passed, however.  In fact, 636 Minnesotans have died of COVID-19 since Plaintiffs filed suit on May 19.  (Declaration of Hillary Taylor ("Taylor Decl."), ¶ 3.)  The total number of Minnesotans hospitalized continues to climb steadily, with the number hospitalized standing at 3,830 on June 22.  (*Id.*)  In hopes of keeping Minnesotans healthy while researchers develop more effective treatments for the virus

and a vaccine, Governor Tim Walz and other elected officials, including the Secretary of State, have encouraged Minnesotans to stay home as much as possible.

With COVID-19 spreading in Minnesota, the Secretary has recognized in legislative testimony that the "administration of elections has become a public health issue."[1]  The Secretary has been emphatic that: "No one should have to choose between their health and their right to vote."[2]  However, designing an election during a pandemic is no easy task.  The Secretary has noted: "There are a number of costs, variables, and trade-offs to consider, and planning at all levels of government will be crucial." *Id.*

It is in this context that the Secretary and Plaintiffs entered into the partial consent decree on June 16, 2020, which suspended enforcement of the Minnesota's witness requirement for the August 11, 2020 primary election, for which early voting begins this week on June 26.  However, as further detailed below, the Secretary respectfully requests the Court abstain from ruling on the partial consent decree, because the Ramsey County District Court partial consent decree approved on June 17, 2020, provides for all the relief that Plaintiffs could obtain from the Secretary on this issue.

To the extent the Court reaches the issue of analyzing the partial consent decree, Defendant requests the decree be approved because it is fair, adequate, reasonable, and in

---

[1]  Office of the Minnesota Secretary of State Steve Simon, *Secretary Simon Introduces Plans for an Election in a Pandemic* (April 7, 2020), https://www.sos.state.mn.us/about-the-office/news-room/secretary-simon-introduces-plan-for-elections-in-a-pandemic/  (last accessed June 21, 2020).

[2]  Office of the Minnesota Secretary of State Steve Simon, *Secretary Simon Statement on Elections amid COVID-19 Pandemic* (Mar. 26, 2020), https://www.sos.state.mn.us/about-the-office/news-room/secretary-simon-statement-on-elections-amid-covid-19-pandemic/ (last accessed June 21, 2020).

the public interest.  Imagine an elderly voter who lives alone.  The Proposed Intervenors would require that voter to risk her life to cast a ballot—either by waiting in line at a polling place or by finding a qualified individual outside her home to come witness her fill out her absentee ballot.  The parties in this case negotiated a fair and reasonable consent decree that would allow such voters to safely cast their absentee ballots in the upcoming primary election.

## FACTUAL BACKGROUND

### I.   THE COVID-19 PANDEMIC.

COVID-19 is an infectious disease caused by a newly discovered coronavirus that spreads rapidly through respiratory transmission.  (Taylor Decl., Ex. 1.)  Asymptomatic individuals may carry and spread the virus and there is currently no known vaccine or effective treatment, making response efforts complex and daunting.  (*Id.*, Exs. 1-2.)  On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. *Id.*, Ex. 3.)  As of June 22, 2020, 33,227 Minnesotans have tested positive for COVID-19 and 1,384 have died.  (*Id.* ¶ 3.)  The virus has claimed over 119,615 lives in the United States since January 22, 2020.  (*Id.* ¶ 7, Ex. 4.)

### II.   MINNESOTA'S RESPONSE TO COVID-19.

In response to the COVID-19 public health crisis, Governor Walz declared a peacetime emergency on March 13, 2020.  (*Id.*, Ex. 7.)  That same day, the President declared a National Emergency, and—for the first time in history—the President has approved major disaster declarations in all 50 states.  (*Id.*, Exs. 5-6.)  Minnesota has engaged in a comprehensive plan to combat COVID-19 that includes slowing the spread

of the disease, protecting the capacity of the state's medical system to respond to the disease, and ensuring the continued operation of critical sectors to protect the public's access to necessary services and supplies.  *See* Emergency Executive Orders 20-02 through 20-63, 20-66, 20-70, and 20-73 through 20-74.[3]

Because COVID-19 is primarily spread from person-to-person contact, limiting contact between people is the most effective way to slow the spread of COVID-19. (Taylor Decl., Ex. 8.)  Governor Walz issued stay-at-home orders in March and April, directing Minnesotans to stay home through May 17, 2020, except to engage in essential activities, certain types of outdoor recreation, or work in critical sectors.  *See* Emergency Executive Orders 20-20, 20-33, and 20-48.  On May 13, 2020, Governor Walz issued Executive Order 20-56 to continue safely reopening Minnesota beginning May 18, 2020. On June 5, 2020, Governor Walz signed Executive Order 20-74, implementing the third phase of the safe and gradual reopening of Minnesota businesses while recognizing the increasing risks this entails.  Even under the current "Stay Safe" Minnesota Order, at-risk and vulnerable Minnesotans are strongly encouraged to stay home and exercise extreme caution to minimize the risk of COVID-19 infection.  Minnesota remains under the COVID-19 Peacetime Emergency Order, most recently extended through July 13. Executive Order 20-75.

---

[3]   All of Minnesota's Emergency Executive Orders regarding COVID-19 are available online at https://www.leg.state.mn.us/lrl/execorders/eoresults?gov=44.

### III.    MINNESOTA'S ABSENTEE WITNESS REQUIREMENT.

Eligible voters in Minnesota may vote by absentee ballot, so long as they comply with the requirements.  Minnesota Statutes, section 203B.07, sets out the requirements for counties to prepare absentee ballots and for voters to mark them.  The Secretary of State establishes the directions that must accompany absentee ballots.  *See* Minn. R. 8210.0500-.0600.   Minnesota statute provides that the counties "prepare, print, and transmit a return envelope, a ballot envelope, and a copy of the directions for casting an absentee ballot to each applicant whose application for absentee ballots is accepted." Minn. Stat. § 203B.07, subd. 1.   The absentee ballot must include a certificate of eligibility.  *Id.* § 203B.07, subd. 3.   The certificate must contain a space for a witness to sign to attest to three facts: "(1) the ballots were displayed to that individual unmarked; (2) the voter marked the ballots in that individual's presence without showing how they were marked, or, if the voter was physically unable to mark them, that the voter directed another individual to mark them; and (3) if the voter was not previously registered, the voter has provided proof of residence as required by section 201.061, subdivision 3." *Id.* The witness who signs the certificate must be "registered to vote in Minnesota or [be] a notary public or other individual authorized to administer oaths" (the "Witness Requirement").[4]  *Id.*

---

[4]   People authorized to administer oaths include "[a]ll persons holding office under any law of this state, or under the charter or ordinances of any municipal corporation thereof." Minn. Stat. § 358.10(a).

Absentee ballots are returned, by mail or in person, to the proper county auditor or municipal clerk. *Id.* § 203B.08, subd. 1. These local officials, in turn, transmit the absentee ballots to the local ballot board. *Id.*, subd. 3. The ballot board is the local government body with the responsibility of accepting or rejecting absentee ballots. *Id.* § 203B.121.

Under Minnesota law, early and absentee voting begins election begins 46 days before the date of the election, which is June 26, 2020 for the August Primary. *Id.* § 203B.081, subd. 1. And absentee instructions, ballots, and envelopes, including the certificate of eligibility, must be prepared in time to have a supply for every precinct available to cover absentee voting prior to that date. *Id.* § 204B.35.

## IV. THE SECRETARY IS DEFENDING SEVERAL OTHER CHALLENGES TO ELECTION STATUTES THIS YEAR.

The Secretary is defending a number of cases challenging election laws which have arisen prior to and during the COVID-19 pandemic. The Secretary's response to all cases has been to evaluate the merits of each challenge, and determine whether the law and facts support defending the statutes at issue, or whether it would be fair, adequate, reasonable, and in the public interest to enter into a consent decree. The most relevant and recent cases include:

- *Schroeder v. Simon*, 62-CV-19-7440, A20-0272 (Minn. Dist. Ct. and Minn. Ct. App.) (served Oct. 21, 2019). In this case, affected Minnesotans challenge the constitutionality of Minnesota's felony disenfranchisement statutes. The Secretary is defending the statutes and filed a motion for summary judgment;

- *Pavek v. Simon*, No. 19-CV-3000 (SRN/DTS) (D. Minn.) (filed Nov. 27, 2019). In this case, two Minnesotans and two Democratic campaign committees challenge the constitutionality of the "Ballot Order" statute, Minn.

Stat. § 204D.13, subd. 2.  The Secretary moved to dismiss Plaintiffs' complaint and opposed Plaintiffs' motion for preliminary injunction.  The court denied the Secretary's motion to dismiss and granted the Plaintiffs' preliminary injunction motion.  2020 WL 3183249, at *30 (D. Minn. June 15, 2020);

- *DSCC v. Simon*, 62-CV-20-585 (Minn. Dist. Ct.) (filed Jan. 17, 2020).  In this case, Democratic campaign committees challenge the constitutionality of aspects of the Voter Assistance Rules in Minn. Stat. § 204C.15, 203B.03.1(a)(7), and 203B.03.2  The Secretary is defending the statutes and filed a motion to dismiss in addition to opposing Plaintiffs' motion for a temporary injunction;

- *Thao v. Simon*, 62-CV-20-1044 (Minn. Dist. Ct.) (served Feb. 11, 2020).  In this case, impacted voters and candidates challenged the constitutionality of aspects of the Voter Assistance Rules.  Based on precedent, the Secretary entered into a consent decree concerning the at-issue restrictions set forth in Minn. Stat. § 204C.15, subd. 1 as preempted by the Voting Rights Act;

- *LaRose v. Simon*, 62-CV-20-3149 (Minn. Dist. Ct.) (filed May 13, 2020).  In this case, four individual Minnesotans and an association challenge the constitutionality of the Witness Requirement and the requirement that mail-in ballots be received on election day by 8:00 pm.  The Secretary entered into a consent decree on June 16, 2020, concerning the challenged requirements for the August Primary only for already registered voters, and the dispute is ongoing concerning the General Election;

- *NAACP Minn.-Dakotas Area State Conf. v. Simon*, 62-CV-3625 (Minn. Dist. Ct.) (filed June 4, 2020).   In this case, non-profits challenge the constitutionality of the Witness Requirement and seek universal absentee ballots for both the August Primary and November General Elections. The dispute is ongoing, but the Secretary notes that the *LaRose* consent decree provides relief for part of Plaintiffs' claim concerning the primary.

## V.   PROCEDURAL POSTURE.

Plaintiffs challenge the constitutionality and enforcement of Minnesota's Witness Requirement, in general and specifically during the ongoing public health crisis caused by COVID-19.  Plaintiffs filed their Complaint for Declaratory and Injunctive Relief on May 19, 2020.  (Dkt. 1.)  Plaintiffs then filed a Motion for Preliminary Injunction on May

29, seeking to enjoin the Witness Requirement for both the August Primary and November General Elections. (Dkts. 13, 15.)

Defendant began researching and drafting his opposition, in addition to filing his Answer on June 9, defending his position and denying many of the allegations. (Dkt. 22.) The parties met and conferred concerning the pending motion and engaged in arms-length negotiations during this time. The result of this work is before the Court with the stipulation and partial consent decree, which suspends the Witness Requirement for already registered voters for the August Primary only. (Dkt. 24.) On June 16, the parties submitted the stipulation and partial consent decree for approval as a fair, adequate, and reasonable resolution of this portion of the case with the public interest in mind. *Id.* Separately, in a state court matter, Defendant entered into a partial consent decree that suspends the Witness Requirement, which was approved by the court on June 17. (*See* Dkt. 28-1, *LaRose v. Simon*, 62-CV-20-3149 (Minn. Dist. Ct. June 17, 2020).) Proposed Intervenors have moved to intervene in that state court matter.

## ARGUMENT

### I.   THE STATE COURT PARTIAL CONSENT DECREE MOOTS PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF.

"It is a firmly entrenched and fundamental principle of law that a cause is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, could not have any practical effect upon the then existing controversy." *Flight Eng'rs Int'l Ass'n, AFL-CIO, TWA Chapter v. Trans World Airlines, Inc.*, 305 F.2d 675, 680 (8th Cir. 1962) (citation omitted); *see Beck v. Mo. State*

*High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam) (stating that a case becomes moot when a court can no longer grant effective relief). Mootness divests the Court of subject matter jurisdiction over a controversy. *Beck*, 18 F.3d at 605; *see Abdurrahman v. Dayton*, 903 F.3d 813, 817 (8th Cir. 2018).[5]

A case becomes moot when subsequent developments in other cases, such as consent decrees, mean relief from a court is no longer needed. *See Envt'l Conserv. Org. v. City of Dallas*, 529 F.3d 519, 527-28 (5th Cir. 2008). In *City of Dallas*, the Fifth Circuit held that a lawsuit between an environmental group and the City of Dallas became moot after the city entered a consent decree with the Environmental Protection Agency in a separate lawsuit on the same issues. *Id.* The court explained that, because the consent decree provided the relief requested by the environmental group, it did not make sense for the defendant to be exposed to duplicative orders in two different cases. *Id.* at 528.

Here, Plaintiffs' claims concerning the August Primary and the Proposed Intervenors' objections to the partial consent decree are now moot because the Secretary has entered into a partial consent decree with identical relief on this same issue in state

---

[5] The Court should consider mootness and the justiciability of the present issue before considering the merits of Proposed Intervenors' motion to intervene and opposition to the partial consent decree. *See S.E.C. v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972) (internal quotations and citation omitted) (It is well settled that "federal courts may act only in the context of a justiciable case or controversy."); *see, e.g.*, *Jou v. Kimberly-Clark Corp.*, No. 13-CV-03075-JSC, 2015 WL 4537533, at *2 (N.D. Cal. July 27, 2015) (finding the court lacked subject matter jurisdiction to entertain motion to intervene where stipulated dismissal divested the court of jurisdiction over the case, and there was no live case or controversy into which the party could intervene).

court.  (*See* Dkt. 28-1, *LaRose v. Simon*, 62-CV-20-3149 (Minn. Dist. Ct. June 17, 2020) (approving partial consent decree filed on June 16, 2020).)  In the Ramsey County District Court action, the Secretary stipulated that he will not enforce the Witness Requirement with respect to already registered voters for the August Primary only. (*Compare LaRose* Partial Consent Decree Sec. VI.A. *with LWV of MN* Partial Consent Decree p. 6 ¶ 1.)  The Secretary agreed to also issue guidance to all relevant local election officials and take reasonable steps to inform the public that the Witness Requirement for voting will not be enforced for the August Primary.  (*Compare LaRose* Partial Consent Decree ¶¶ VI.C, E, G *with LWV of MN* Partial Consent Decree p. 6 ¶¶ 2-4.)  Notably, Proposed Intervenors do not dispute this obvious justiciability issue, and admit that "it would be 'particularly inappropriate' for this Court to enter a consent decree when '[m]uch of the relief requested here has been provided by [another consent] decree.'" (Dkt. 41, Prop. Intervenors' Opp. at 35.)

Additionally, after the *LaRose* partial consent decree was approved on June 17, the Secretary has taken steps presently to abide by the decree.  (Taylor Decl., ¶ 12, Ex. 9.) There is no remaining controversy between Plaintiffs and Defendant concerning the August Primary and the enforcement of the Witness Requirement.  Because the Ramsey County District Court partial consent decree provides for all of the relief that Plaintiffs could obtain from the Secretary on this issue, the Court should abstain from deciding on

the present partial consent decree and dismiss Plaintiffs' claim for injunctive relief as moot.[6]

## II.  THE PRINCIPLES OF *COLORADO RIVER* SUPPORT ABSTENTION.

Even if the request for judicial approval of the parties' consent decree is not moot, the present circumstance is one in which the Court should abstain from taking any action under the *Colorado River* doctrine.  The Proposed Intervenors acknowledge as much by suggesting that analyzing the consent decree in this action may not be a "worthwhile 'commitment of the court's limited resources.'"  (Dkt. 41 at 35.)  Because the *LaRose* case was started first and is the more complete action, and the consent decree is approved and being implemented, this court should abstain in favor of the parallel proceeding in state court.

"*Colorado River* permits federal courts to decline to exercise jurisdiction over cases where 'parallel' state court litigation is pending, meaning that there is 'a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court.'" *Spectra Commc'ns Group, LLC v. City of Cameron, Mo.*, 806 F.3d 1113,

---

[6]  None of the exceptions to mootness exist here.  The voluntary cessation doctrine does not apply because Defendant is not merely ceasing the challenged practice.  *See City of Dallas*, 529 F.3d at 527-28.  Defendant is subject to the Ramsey County District Court partial consent decree.  Nor is this an issue "capable of repetition, yet evading review." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 735-36 (2008).  "That exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* at 735 (internal quotation marks and citation omitted).

1121 (8th Cir. 2015) (citation omitted); *see generally* 17A Fed. Prac. & Proc. Juris. § 4247 (3d ed.) (describing the development of this type of abstention).

A threshold determination is whether the federal and state proceedings are indeed parallel. Proceedings are parallel when there is "a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) (finding matters not parallel because the federal court had exclusive jurisdiction over one of plaintiff's claims). Considerations include "the sources of law, remedies sought, elements of proof, review on appeal, and events giving rise to each cause of action." *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 537 (8th Cir. 2009).

In this case, it is undisputed that the *LaRose* consent decree does fully dispose of the consent decree entered between the parties to this case. (*See supra.*) The consent decree here is subsumed by the broader *LaRose* consent decree. The decrees arise out of the same events (COVID-19) and statutes, the same law, and provide the same relief with respect to the Witness Requirement. Where there are differences, the *LaRose* case is broader. Furthermore, the Proposed Intervenors have now sought to intervene in both actions. At least with respect to the issue immediately before the Court—the parties' consent decree—the *LaRose* consent decree does dispose of the instant consent decree.[7]

After establishing the two matters are parallel, courts look at six factors to assess whether abstention is appropriate in favor of the state case:

---

[7] Defendant will leave for another day the question of whether the entire cases are sufficiently parallel that this Court should abstain by staying or dismissing the matter.

(1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Spectra Commc'ns Grp.*, 806 F.3d at 1121 (quoting *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995)).

The Eighth Circuit's decision, affirming *Colorado River* abstention in *Spectra Communications,* is on all fours with the instant case.  In that dispute between a city and telecommunications company, the city had sued the company in state court for failure to pay taxes and fees.  Five months later, the company sued the city in federal court, alleging that the city refused to grant it a construction permit unless and until the company was current in its payment of taxes and fees (the company asserted those same claims as counterclaims in the state litigation).  The state court granted partial summary judgment for the city on the issue of the propriety of the taxes and fees.  The city then moved to have the company's federal claims dismissed, and the district court dismissed based on abstention principles.  *Id.* at 1117-18.

In applying the six factors of *Colorado River*, the Eighth Circuit noted that the first two were irrelevant in *Spectra Communications*.  However, the "predominant factor"—the risk of piecemeal litigation—was a real concern and weighed in favor of abstention.  *Id.* at 1121.  That was true because: a) the state and federal courts involved the same issues, so there was a risk they would reach conflicting opinions; and b) the

state court action was also the more complete action – it included all the relevant parties and all the relevant claims. *Id.* at 1122. The fourth factor also favored abstention because the state court was the first to obtain jurisdiction over the parties and had already entered partial summary judgment. *Id.* Even though the fifth factor weighed against abstention, because the telecom had raised federal preemption issues, the court still found abstention appropriate, especially as the state court could resolve all claims and protect the telecom's interests. *Id.*

In this case too, the first two factors are irrelevant. But the most predominant factor, the risk of conflicting opinions, is a real concern. Furthermore, as in *Spectra*, the *LaRose* matter was filed first and has already issued its consent decree. While the Plaintiff here raises federal claims, those First and Fourteenth Amendment are claims commonly addressed in state court and the Plaintiff's interests can be protected there (especially if they seek to intervene). Just as in *Spectra Communications*, the Court should abstain in favor of the parallel proceeding in Ramsey County District Court.

## III. ALTERNATIVELY, THE COURT SHOULD APPROVE AND ENTER THE PARTIAL CONSENT DECREE BECAUSE IT IS FAIR, ADEQUATE, REASONABLE, AND IN THE PUBLIC INTEREST.

Alternatively, if the Court does not abstain, the Court should approve and enter the consent decree because it is a fair, adequate, and reasonable resolution of the claims concerning the August Primary, and time is of the essence.

A consent decree represents the parties' agreement to compromise a concrete legal dispute on the merits and waive any right to further litigate the covered issues. *See United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971). Consent decrees have

attributes of both a contract and a judicial decree, and are considered settlement agreements subject to continued judicial oversight. *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 524 n.13 (1986); *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 237 n.10 (1975). Unsurprisingly, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree, nor may it enter a consent decree that attempts to dispose of the claims of a third party, without that party's agreement. *Local No. 93*, 478 U.S. at 529. But neither may "an intervenor . . . preclude other parties from settling their own disputes and thereby withdrawing from litigation" certain issues. *Id.* (noting "while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent").

The initial decision to approve or reject a consent decree "is committed to the sound discretion of the trial judge." *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (citation omitted). Courts, however, usually exercise this discretion in a limited and deferential manner. *See id.* In reviewing a proposed consent decree, the Court does not decide the merits of the parties' dispute. *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983) ("A consent decree . . . should be strictly construed to preserve the bargained for position of the parties. A court has no occasion to resolve the merits of the disputed issues or the factual underpinnings of the various legal theories advanced by the parties." (internal citations omitted)). Rather, the standard the Court applies when reviewing a proposed consent decree is to determine whether the decree is "fair,

adequate, and reasonable, as well as consistent with the public interest." *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *see E.E.O.C. v. Prod. Fabricators, Inc.*, 666 F.3d 1170, 1172 (8th Cir. 2012); *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir.1990), *cert. denied sub nom*, *Makah Indian Tribe v. United States*, 501 U.S. 1250 (1991).  Once the Court has determined the proposed decree is fair, adequate, reasonable, and in the public interest, it should approve the decree even if it "provides broader relief than the court could have awarded." *Local No. 93*, 478 U.S. at 525; *see Randolph*, 736 F.2d at 529.

It is well established that public policy strongly favors settlements of disputes without litigation.  *United States v. Hooker Chem. & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir. 1985); *Randolph*, 736 F.2d at 528.  Also, judicial deference to negotiated consent decrees is particularly appropriate where the government has entered into a consent decree*.  See Randolph*, 736 F.2d at 529; *see also United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981) (finding the balancing of interests "must be left, in the first instance, to the discretion of the Attorney General"); *United States v. Assoc. Milk Producers, Inc.*, 534 F.2d 113, 117 (8th Cir. 1976) (stating the "Attorney General must retain considerable discretion in controlling government litigation and in determining what is in the public interest").

## A.     The Partial Consent Decree is Fair, Adequate, and Reasonable.

When considering whether a consent decree is fair, adequate, and reasonable, courts consider a number of factors, such as whether the decree is the result of arms-length negotiations, the strength of plaintiffs' case and likelihood of success, and whether

the decree represents a reasonable factual and legal determination. *United States v. Lexington-Fayette Urban Cty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84, 86 (1st Cir. 1990); *Oregon*, 913 F.2d at 581. "A court may not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case." *Vukovich*, 720 F.2d at 922; *see Oregon*, 913 F.2d at 581-82; *Local No. 93*, 478 U.S. at 525-26. In assessing the decree, the Court must determine whether it falls within the "range of reasonableness," not whether it is the most favorable possible result for either party in the litigation. *See In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *2 (S.D. Ohio Aug. 19, 2009); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006).

Here, the parties entered into arms-length negotiations after Plaintiffs filed and fully briefed a motion for a preliminary injunction on an emergency basis. Defendant had no doubt that Plaintiffs could prove that, given the current situation regarding COVID-19, some isolated voters, and in particular those who are immunocompromised or elderly, will likely not be able to safely secure a qualified witness in order to cast absentee ballots for the upcoming primary election. If the absentee witness requirement were enforced, these voters would have to choose between their health and their right to vote.

Defendant was also aware that a federal court in Virginia had recently approved a consent decree suspending that state's witness requirement for this year's primary election, and a federal court in South Carolina had recently enjoined that state's witness

17

requirement for its primary.  *See, e.g.*, *Thomas v. Andino*, No. 3:20-CV-01552, 2020 WL 2617329, at \*22 (D.S.C. May 25, 2020); *League of Women Voters of Va. v. Va. State Bd. of Elections*, No. 6:20-CV-00024, 2020 WL 2158249, at \*10 (W.D. Va. May 5, 2020).

The Virginia court succinctly explained why a witness requirement should not be enforced in the time of COVID-19:

> In ordinary times, Virginia's witness signature requirement may not be a significant burden on the right to vote.  But these are not ordinary times.  In our current era of social distancing-where not just Virginians, but all Americans, have been instructed to maintain a minimum of six feet from those outside their household–the burden is substantial for a substantial and discrete class of Virginia's electorate.  During this pandemic, the witness requirement has become both too restrictive and not restrictive enough to effectively prevent voter fraud.

*League of Women Voters of Va.*, 2020 WL 2158249, at \*8 (quotation marks and citation omitted).

While Proposed Intervenors rely on *Republican National Committee v. Democratic National Committee*, 140 S. Ct. 1205 (2020), this case actually supports the partial consent decree because it establishes that reforms or modifications to state election laws due to the COVID-19 pandemic are appropriate.  The case involved the issue of whether several election laws in Wisconsin should be altered or suspended for its April 7, 2020 primary election because of the pandemic.  The district court had ordered that absentee ballots received six days after the election should be counted, regardless of when they are postmarked.  *Id.* at 1206.  The Supreme Court altered the district court's injunction so that ballots had to be postmarked by Election Day to be counted.  *Id.* at 1208.  While the Supreme Court somewhat narrowed the district court's order, even the

Supreme Court's order marked a departure from Wisconsin's normal election requirement that ballots must be received by election day.  *Id.* at 1209 (Ginsburg, J., dissenting).  The Supreme Court, recognizing that COVID-19 required an adjustment to the state election requirement, ordered that ballots must be counted if they are postmarked by Election Day and received within six days of Election Day.  *Id.* at 1208. The Court took no position on "whether other reforms or modifications in election procedures in light of COVID–19 are appropriate," but did not rule them out.  *Id.*

Here, the agreement before the Court is fair, adequate, and reasonable and recognizes the uncertainties and unique pressures of voting during the COVID-19 pandemic.  The Proposed Intervenors' hostility to state officials' good faith efforts to find ways to allow voters to safely cast their ballots during this pandemic is remarkable.[8] There is nothing fair, adequate, or reasonable about Proposed-Intervenors' position that voters should have to risk their health and safety to cast a ballot.

---

[8]   Proposed Intervenors insinuate collusion because Defendant made efforts to get legislation passed that would relax absentee-voting rules and is "a member of the League of Women Voters."  (Dkt. 41 at 27.)  This is a baseless attempt to undermine the propriety of the partial consent decree and the arms-length negotiation between experienced counsel.  "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion."  *League of Women Voters of Va.*, 2020 WL 2158249, at *11 (citation omitted); *see In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered.").  Also, if the consent decree "itself is fair, reasonable and adequate, then the court may assume that the negotiations were proper and free of collusion."  *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)

**B.**     **The Partial Consent Decree is in the Public Interest.**

It is clear here that the Defendant, Plaintiffs, and Proposed Intervenors have different views of what the public interest requires. However, as noted above, it is axiomatic that the Attorney General and the Secretary of State, as the Chief Legal Officer and Chief Election Officer respectively, "retain considerable discretion" in the defense of these cases and in "determining what is in the public interest." *Assoc. Milk Producers, Inc.*, 534 F.2d at 117.

Defendant has determined, as other states have, that temporarily suspending the Witness Requirement for the impending primary election promotes the public interest in safeguarding public health. *See, e.g.*, *Thomas*, 2020 WL 2617329, at *22 (South Carolina); *League of Women Voters of Va.*, 2020 WL 2158249, at *10 (Virginia).[9] Like other states, Minnesota has a "legitimate interest in preventing voter fraud and safeguarding voter confidence." *Brakebill v. Jaeger*, 932 F.3d 671, 678 (8th Cir. 2019). However, this interest must be weighed along with other considerations in the midst of a pandemic where officials are called on to remedy dangerous or unhealthy situations and prevent the further spread of disease. The public interest also "favors permitting as many qualified voters to vote as possible." *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012).

---

[9]  Rhode Island's Governor suspended the state's witness requirement in advance of the June primary through executive order. *See* Rhode Island Executive Orders 20-11, 20-27, *available at*  https://governor.ri.gov/newsroom/orders/ (last accessed June 22, 2020).

As the Court in *Thomas* acknowledges, "[w]ere it not for the current pandemic, then this element *may* have cut the other way." *Thomas*, 2020 WL 2617329, at *23. But the Witness Requirement subjects some voters to interaction with people outside their household in a way that could impact their health negatively and be in contravention to current state and federal health experts' guidelines. Since Defendant reasoned after research, investigation, and consideration of a number of options that maintaining the Witness Requirement with absentee voting starting on June 26 would only increase the risk for contracting COVID-19 for many Minnesotans, he entered into this partial consent decree to promote the public interest.

### C.   The Court May Approve the Partial Consent Decree Over the Proposed Intervenor's Objections.

Despite Proposed Intervenors arguments, there is no authority for the Proposed Intervenors to "block" this consent decree given their alleged legal interests in the matter. As the Supreme Court has stated:

> A consent decree is primarily a means by which parties settle their disputes without having to bear the financial and other costs of litigating. It has never been supposed that one party—whether an original party, a party that was joined later, or an intervenor—could preclude other parties from settling their own disputes and thereby withdrawing from litigation. **Thus, while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent.**

*Local No. 93*, 478 U.S. at 528-29 (emphasis added). The Supreme Court only provides an exception where "nonconsenting intervenors" have brought "valid claims" that are "properly raised." *Id.* at 529; *see S. California Edison Co. v. Lynch*, 307 F.3d 794, 807

(9th Cir.) (citing *Local No. 93*, finding the district court did not exceed its authority by approving the stipulated settlement without the intervenor's consent). While the Court may permit input from Proposed Intervenors when considering entry of the consent decree, to accord Proposed Intervenors what amounts to a veto based on their claims would effectively preclude settlement of *any* election law litigation by the Secretary—an illogical and unsupported outcome.

Here, the Proposed Intervenors have not demonstrated that the partial consent decree concretely affects any of their legal rights. "As in *Local No. 93*, the consent decree here does not bind [Proposed Intervenors] to do or not to do anything, nor does it impose any legal obligations on [Proposed Intervenors]." *Johnson v. Lodge #93 of Fraternal Order of Police*, 393 F.3d 1096, 1107 (10th Cir. 2004); *see Local No. 93*, 478 U.S. at 528-29. Outside of raising a difference of opinion in how they would have defended this matter, the Proposed Intervenors have not presented any claim for relief to the Court, but rather joined the action solely to protest the proposed consent decree. The interests the Proposed Intervenors raise do not amount to the kind of "valid claims" the Supreme Court envisioned in *Local No. 93*. It is the Secretary of State who is a necessary party to the litigation and consent decree, and who has authority to make the decision to suspend the Witness Requirement for the August Primary. *See, e.g.*, *Lawyer v. Dep't of Justice*, 521 U.S. 567, 576-77 (1997) (finding in a redistricting case the state should be given the opportunity to make its own decisions so long as that is practically possible, and the state's attorney general had the authority "to propose the settlement plan" on the

state's behalf).  Thus, the Court may approve the partial consent decree over the Proposed Intervenors' objections.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully submits that this Court no longer has jurisdiction over the partial consent decree because the issue is moot, or at least that the Court should abstain from passing on the partial consent decree's appropriateness.  To the extent the Court reaches the issue of analyzing the partial consent decree, Defendant requests the decree be approved because it is fair, adequate, reasonable, and in the public interest.

Dated:  June 22, 2020

KEITH ELLISON
Attorney General
State of Minnesota


__s/ Hillary A. Taylor__
JASON MARISAM (#0398187)
CICELY R. MILTICH (#0392902)
HILLARY A. TAYLOR (#0398557)
Assistant Attorneys General

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2131
(651) 757-1275 (Voice)
(651) 282-5832 (Fax)
jason.marisam@ag.state.mn.us
cicely.miltich@ag.state.mn.us
hillary.taylor@ag.state.mn.us

ATTORNEYS FOR DEFENDANT
SECRETARY OF STATE STEVE SIMON