### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| League of Women Voters of Minnesota Education Fund; Vivian Latimer Tanniehill; Isabel Bethke; and Malea Marxer, | Civil Action No. 0:20-cv-01205-ECT-TNL |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| Steve Simon, in his official capacity as Secretary of State of Minnesota, | |
| Defendant, | |
| and | |
| Donald J. Trump for President, Inc.; Republican National Committee; and Republican Party of Minnesota | |
| Intervenor-Defendants. | |

### INTRODUCTION

1.     Minnesotans take pride in having built what is, in many ways, a thriving democracy. Minnesota's voter turnout routinely tops the nationwide rankings. The state provides access to absentee ballots for all registered voters, while successfully protecting its elections from fraud and maintaining public trust in the system.

2.     However, the nationwide outbreak of Coronavirus Disease 2019 ("COVID-19") poses a serious threat to the health of American elections. Minnesota is not immune. In fact, Minnesota's election system includes a feature that makes it *especially* vulnerable to the risk of suppressed voter participation during the COVID-19 pandemic.

3.      To vote by absentee ballot in Minnesota, a voter must fill out the ballot in the physical presence of a witness and have the witness sign a certificate. Requiring a witness for absentee voting places Minnesota in a small minority of states. Moreover, Minnesota imposes unusually restrictive limits on who may serve as a witness for absentee voting. Only a registered Minnesota voter, a notary, or another person authorized to administer oaths may play this role.

4.      Minnesota's August 2020 primary and November 2020 general election were conducted under extraordinary circumstances. At the urging of health experts and their own governmental leaders, millions of Minnesotans—especially senior citizens and those with underlying health conditions—scrupulously avoided contact with people outside their households to slow the spread of COVID-19. Under current state law, for as long as the pandemic persists, absentee voting will require voters to violate this social distancing protocol, unless they happen to live with someone who can serve as a witness.

5.      Minnesotans' constitutional right to vote cannot be conditioned on their willingness to subject themselves, their families, and their communities to a heightened risk of COVID-19. This is particularly true when the state law forcing voters to interact in person with witnesses is, at best, minimally useful to the state.

6.       Moreover, even in ordinary times, Minnesota's restrictive qualifications on *who* can serve as a witness to an absentee ballot severely burden many Minnesota voters and are not tailored to any state interest. Absentee voting processes are often used because a voter will not be in the state on Election Day. For such voters, finding a Minnesota registered voter to serve as a witness is a significant and, at times, impossible, challenge to overcome. Minnesota registered voters are not uniquely qualified to attest to a person's identity; indeed, among states that have a

similar witness requirement for absentee ballots, Minnesota is the *only* state with such a restrictive stance on who can serve as a witness to a ballot.

7.     Plaintiffs therefore seek an injunction and declaratory judgment permitting Minnesota voters to vote by absentee ballot in elections conducted during the COVID-19 pandemic without involving a witness, as well as permanent relief from Minnesota's unduly restrictive qualification requirements for who may serve as a witness.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.     This Court has personal jurisdiction over Defendant Steve Simon, who is a citizen of Minnesota and resides and maintains his office in this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and because the events and omissions giving rise to Plaintiffs' claim occurred in this District.

11.     This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### *Plaintiffs*

12.     Plaintiff League of Women Voters of Minnesota Education Fund ("LWVMN") is a nonpartisan, nonprofit organization under Section 501(c)(3) of the Internal Revenue Code and is an affiliate of the League of Women Voters of the United States. LWVMN encourages informed and active participation in government, works to increase understanding of major public policy issues, and influences public policy through education and advocacy. LWVMN has approximately

2,200 members throughout Minnesota. These members, like all Americans, have all had their daily lives altered by COVID-19. Most, if not all, of these members are adhering to strict social distancing protocols to avoid contracting the coronavirus. Many of LWVMN's members are particularly vulnerable to COVID-19 either due to their age or other underlying health conditions. Others live in households with individuals particularly vulnerable to COVID-19. Some of these members live by themselves or live in households that do not include another registered Minnesota voter. Thus, some of LWVMN's members are registered voters who, under current law, will face a choice between risking their health in order to vote or not voting at all because of Minnesota's witness requirement for absentee voting. LWVMN also has members who travel or temporarily reside out-of-state and must vote absentee while they are away from their permanent residence. These voters face undue barriers to absentee voting due to the requirement that a Minnesota registered voter or notary witness their ballot. Moreover, LWVMN serves as the primary nonprofit organization facilitating voter registration at naturalization ceremonies in Minnesota, assisting many new American citizens to register in Minnesota each year. Many naturalized citizens live in mixed immigration status households where they may be the only adult citizen (and thus, the only eligible voter). LWVMN has a strong interest in ensuring that the voters it registers can effectively cast a ballot, but under Minnesota's restrictive eligibility requirements for witnesses to absentee ballots, many such citizens may face unnecessary burdens that limit their ability to find an eligible witness and effectively cast their ballots—especially during the pandemic, when social distancing requirements and other public health measures are in effect.

13.    LWVMN has diverted resources, and will continue to divert resources, away from its core activities in order to educate voters about the witness requirement and, to the extent possible, help them comply.

14.     Plaintiff Vivian Latimer Tanniehill is a registered voter in Woodbury, Minnesota. She serves as Advocacy Chair of LWVMN and is a member of both LWVMN and the Woodbury-Cottage Grove Area chapter of the League of Women Voters. Ms. Latimer Tanniehill is sixty-eight years old and lives alone. She has lived in Minnesota since she was seven years old, when her family moved from Birmingham, Alabama. As a Black woman who spent her early childhood in the Jim Crow South, Ms. Latimer Tanniehill remembers her mother telling her about schemes of disenfranchisement, from poll taxes to literacy tests written in foreign languages. Shortly after moving to Minnesota, she saw her mother vote in the 1960 election—the first election in which she had ever been able to vote. These early experiences impressed upon Ms. Latimer Tanniehill the paramount importance of voting. As an adult, she has voted regularly. Although she usually votes in person, she voted by absentee ballot in the August and November 2020 elections due to the COVID-19 pandemic. She plans to vote by absentee ballot so long as the danger of the COVID-19 pandemic persists. Ms. Latimer Tanniehill has previously had heart surgery, and lives with underlying health conditions that place her at an elevated risk of becoming severely ill if she contracts COVID-19. She fears contracting and spreading COVID-19 if she is forced to interact with another person in order to vote.

15.     Plaintiff Isabel Bethke is a registered voter in St. Paul, Minnesota. She is a doctoral candidate in English literature at the University of Minnesota, Twin Cities, in Minneapolis, Minnesota. She moved to Minnesota from the greater Chicago area in 2020 with her husband, who is a doctoral candidate in theoretical chemistry at the University of Chicago. Ms. Bethke and her husband were married in June 2020. He is a German national, and his application for U.S. citizenship is pending. Ms. Bethke registered to vote upon moving to Minnesota and requested an absentee ballot for the November 2020 general election. Despite her prior registration, when she

received her absentee ballot, she also received a notice from the Ramsey County Elections Office that she needed to register alongside casting her absentee ballot. Although the witness signature requirement for absentee ballots was waived for registered voters during the November 2020 election, it was not waived for unregistered absentee voters. Thus, Ms. Bethke was required to have another Minnesota registered voter or notary witness her ballot and voter registration application.

16.     Because her husband is not a U.S. citizen, Ms. Bethke had to locate someone else outside her household to witness her ballot, despite the recommendations of public health officials to avoid contact with people outside her household. As a newly-arrived Minnesotan, Ms. Bethke did not know anyone in her area who could serve as a witness, and had to seek out a neighbor, introduce herself, and ask them to serve as a witness—all during the height of the COVID-19 pandemic. On her third attempt, she was able to make contact with a neighbor who was willing to witness her ballot and registration application.

17.     Plaintiff Malea Marxer is a resident of Wayzata, Minnesota who has lived in the North Star State since 2002 and is eligible to vote in Minnesota. Ms. Marxer is an 18-year-old first-year student at Gonzaga University in Spokane, Washington, where she was temporarily living in a dormitory during the November 2020 election. Ms. Marxer is considering a transfer to the University of Denver in Denver, Colorado for her second year of college, which would similarly require her to temporarily reside out-of-state while maintaining her status as an eligible Minnesota voter.

18.     In advance of the November 3, 2020 General Election, Ms. Marxer requested, received, and returned a voter registration form and absentee ballot. Ms. Marxer did not have another Minnesota registered voter witness her ballot or her registration form because she

understood that the witness requirement was being waived for the 2020 election in light of the COVID-19 pandemic. Moreover, as a temporary resident of Spokane, Washington, Ms. Marxer was unaware of any other Minnesota registered voters in her proximity that could have witnessed her absentee ballot. Finding such a witness would have been even more difficult in light of the social distancing protocols Gonzaga University put in place in response to the COVID-19 pandemic. Just a few days before Election Day, Ms. Marxer received a notice that her absentee ballot was rejected because she did not have another registered Minnesota voter witness her voter registration application. Because Ms. Marxer received notice that her ballot was rejected just days before Election Day, she did not have time to request a new ballot and registration form, find a registered Minnesota voter to serve as a witness, and mail them back in time to be received and counted. Even with additional time, Ms. Marxer was not aware of any available witness for her absentee ballot. As a result, Ms. Marxer was not able to cast a vote in the November 3, 2020 General Election, the first general election for which she was eligible to vote.

*Defendant*

19.     Defendant Steve Simon ("Secretary Simon" or "Defendant") is the Secretary of State of Minnesota and is sued in his official capacity. Secretary Simon plays a central role in administering and overseeing Minnesota elections. Secretary Simon is responsible for compiling and publishing Minnesota's general election laws and has the power to issue "detailed written instructions" to local officials "for complying with election laws relating to the conduct of elections, conduct of voter registration and voting procedures." Minn. Stat. § 204B.27, subd. 2. More specifically, Secretary Simon is required to adopt legally binding rules "establishing procedures to be followed by county auditors and municipal clerks to assure accurate and timely return of absentee ballots," Minn. Stat. § 203B.08, subd. 4, "establishing the form, content, and

type size and style for the printing of blank applications for absentee ballots, absentee voter lists, return envelopes, certificates of eligibility to vote by absentee ballot, ballot envelopes, and directions for casting an absentee ballot," Minn. Stat. § 203B.09, and governing "the conduct of mail balloting," Minn. Stat. § 204B.45, subd. 3.

*Intervenor-Defendants*

20.     Intervenor Defendant Donald J. Trump for President, Inc. ("Trump Campaign") is the principal committee for President Donald J. Trump's reelection campaign in the 2020 presidential election.

21.     Intervenor Defendant the Republican National Committee ("RNC") is a national committee as defined by 52 U.S.C. § 30101. The RNC manages the Republican Party's business at the national level, supports Republican candidates for public office at all levels, coordinates fundraising and election strategy, and develops and promotes the national Republican platform.

22.     Intervenor Defendant the Republican Party of Minnesota ("RPM") is a recognized political party that works to promote Republican values and to assist Republican candidates in obtaining election to partisan federal, state, and local office in Minnesota.

**FACTS**

*Absentee Ballots are Crucial to Voter Access in Minnesota,*
*Especially During the COVID-19 Pandemic*

23.     Any eligible voter in Minnesota may vote by absentee ballot. Minn. Stat. § 203B.02, subd. 1. Minnesota law also permits elections in certain towns, cities, and unorganized territories to be conducted entirely by mail, "with no polling place other than the office of the auditor or clerk or other locations designated by the auditor or clerk." Minn. Stat. § 204B.45.

24.    Officials at the state and local levels participate in administering absentee voting.[1] The Secretary of State coordinates absentee voting statewide by promulgating rules to establish uniform procedures and prescribe standard forms for printed materials including ballot envelopes, return envelopes, certificates of eligibility, and instructions to voters. See Minn. Stat. § 203B.08; Minn. Stat. § 203B.09; Minn. Stat. § 204B.45, subd. 3.; see also Minn. R. 8210.0500 (form instructions to absentee voters, promulgated by the Secretary); Minn. R. 8210.3000, subp. 4a (form instructions to voters in mail elections, promulgated by the Secretary). County auditors and municipal clerks administer absentee voting locally by, inter alia, printing the necessary materials, accepting absentee ballot applications, providing ballots to eligible voters, receiving voted ballots, and delivering those ballots to the local ballot board for acceptance or rejection. See Minn. Stat. §§ 203B.05-203B.08, 203B.121, 204B.45. In printing materials for absentee voting, local officials must follow precisely the forms prescribed by the Secretary of State. Minn. Stat. § 203B.09.

25.    Minnesota held two statewide election days in 2020. Primary elections for offices including U.S. Senate, U.S. House of Representatives, Minnesota Senate, and Minnesota House of Representatives, among others, were held on August 11, with early voting from June 26 to August 10. The general Presidential election was held on November 3, with early voting from September 18 to November 2.

26.    Minnesota's next upcoming statewide elections will take place in 2022. Primary elections for offices including Governor, Minnesota Senate, Minnesota House of Representatives, and U.S. House of Representatives will take place on August 10, 2022. The general gubernatorial, legislative, and Congressional elections will take place on November 8, 2022.

---

[1] Except when this Amended Complaint specifically distinguishes between absentee voting under Minn. Stat. Chapter 203B and mail elections under Minn. Stat. §§ 204B.45 and 204B.46, the term "absentee" as used herein refers to all ballots transmitted by mail in Minnesota.

27.     Many townships and city offices will be up for election in 2021, including school board elections in Wayzata, where Ms. Marxer lives, mayoral elections in St. Paul, where Ms. Bethke lives, and mayoral elections in Minneapolis, where several members of LWVMN live and are registered to vote. LWVMN also has members throughout the state who are eligible to vote in local elections in 2021, including in Brooklyn Park and Bloomington. Township Elections are scheduled to take place on March 9, 2021 and the Minneapolis and St. Paul Mayoral elections are scheduled to take place on November 2, 2021.

28.     In Minnesota's 2020 elections, access to absentee voting was substantially more important than it has been in the state's past elections due to the COVID-19 pandemic. As long as the pandemic continues and public health measures limit Minnesotans' ability to gather in person with others outside their immediate households, Minnesota voters will increasingly rely upon absentee voting to exercise their fundamental right to vote without risking their health and the health of their communities.

29.     SARS-CoV-2, the virus that causes COVID-19, spreads easily. Health experts agree that to minimize the chance of contracting COVID-19, it is important for individuals to maintain at least six feet of distance between themselves and others outside their household.

30.     COVID-19 causes severe illness in many patients. Among infected individuals, COVID-19 is, by conservative estimates, several times more likely to cause death than seasonal

influenza.[2] Individuals over age 65 and those with certain underlying health conditions are at heightened risk of becoming severely ill or dying from COVID-19.[3]

31.     As of December 30, 2020, there have over 19 million confirmed cases of COVID-19 and more than 330,000 deaths attributed to COVID-19 in the United States, according to the Centers for Disease Control and Prevention ("CDC"). Minnesota has had more than 411,000 confirmed cases and nearly 5,200 deaths attributed to COVID-19.

32.     Although COVID-19 infection rates may decline over the next few months, particularly in light of the approval of vaccine treatments by the U.S. Food and Drug Administration ("FDA"), subsequent resurgences of the disease in Minnesota and throughout the U.S. may occur in 2021. As of December 2020, COVID-19 cases, hospitalizations, and deaths are at their highest levels since the pandemic began both nationwide and in Minnesota. Until widespread immunity and vaccination can be achieved—a process that will likely take many months, if not longer—widespread abandonment or relaxation of social distancing behavior will likely lead to a spike in COVID-19 transmission.

33.     Individuals who currently feel and look healthy may nonetheless be contagious carriers of COVID-19. The median incubation period for COVID-19—the length of time between exposure and onset of symptoms—is approximately four to five days. For some individuals, the incubation period may be as long as fourteen days. In some documented cases, individuals infected

---

[2] *See* Joel Achenbach, *Antibody tests support what's been obvious: Covid-19 is much more lethal than the flu*, WASH. POST (Apr. 28, 2020), https://www.washingtonpost.com/health/antibody-tests-support-whats-been-obvious-covid-19-is-much-more-lethal-than-flu/2020/04/28/2fc215d8-87f7-11ea-ac8a-fe9b8088e101_story.html.

[3] *People Who Are at Higher Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (updated Apr. 15, 2020).

with SARS-CoV-2 never develop symptoms. Infected individuals have been observed to transmit the virus to others while not experiencing symptoms.[4]

34.     Many U.S. residents without COVID-19 symptoms are unable to access testing to determine whether they currently have COVID-19.

35.     Recognizing the need for social distancing in order to reduce the spread of COVID-19, Minnesota Governor Tim Walz issued a series of Executive Orders directing Minnesota residents to stay home and refrain from engaging in direct social interaction with others outside their immediate households, except when engaging in certain exempt activities.[5] Governor Walz declared a COVID-19 peacetime emergency on March 13, 2020, and has extended the emergency several times, including through at least January 13, 2021.[6] The current Executive Orders prohibit indoor gatherings of more than ten people involving persons from more than two households and outdoor gatherings involving more than fifteen people from more than three different households (provided that in both indoor and outdoor gatherings, persons from different households maintain at least six feet of distance from each other); requires certain public accommodations, including indoor entertainment and events venues to stay closed; and mandates social distancing protocols and capacity limits for commercial establishments such as restaurants and bars that remain open.[7]

---

[4] *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (updated May 15, 2020).
[5] Minn. Emergency Exec. Order 20-48, Extending and Modifying Stay at Home Order, Continuing Temporary Closure of Bars, Restaurants, and Other Places of Public Accommodation, and Allowing Additional Workers in Certain Non-Critical Sectors to Return to Safe Workplaces (Apr. 30, 2020), https://mn.gov/governor/assets/EO%2020-48%20Final_tcm1055-430499.pdf.
[6] Minn. Emergency Exec. Order 20-100.
[7] Minn. Exec. Order 20-103.

36.     Given the poor public health conditions, in-person voting at the same levels as ordinary elections will not be safe in upcoming elections, particularly for those most vulnerable to COVID-19.

37.     The danger of large-scale in-person voting during the COVID-19 pandemic is illustrated by the Wisconsin presidential primary election held April 7, 2020, which drew more than 400,000 in-person voters, owing in part to the state's failure to provide absentee ballots with sufficient time for many voters to return them. At least sixty-seven people tested positive for COVID-19 after voting in person or serving as poll workers in the Wisconsin primary.8 In Milwaukee County alone, at least fifty-two individuals who participated in the election as in-person voters or poll workers had tested positive for COVID-19 by May 4, including twenty-six who did not begin experiencing symptoms until April 9 or later.9 An analysis by university economists has preliminarily found that, controlling for other potentially relevant factors, Wisconsin counties with more in-person voters per voting location had higher rates of positive COVID-19 tests, while counties with more absentee voting had lower positive COVID-19 test rates—patterns that emerged in the weeks following the primary.10

---

[8] David Wahlberg, *67 got COVID-19 after visiting polls in state's April 7 election but tie to voting unclear*, WISC. STATE J. (May 8, 2020), https://madison.com/wsj/news/local/health-med-fit/67-got-covid-19-after-visiting-polls-in-states-april-7-election-but-tie-to/article_49a42a7e-45d8-50cc-bd76-3a583842de39.html.

[9] *Descriptive Analysis of COVID-19 Infections in Milwaukee County after the Wisconsin Election and Easter/Passover Holidays* 7, Milwaukee Cty. COVID-19 Epidemiology Intel Team, WUWM 89.7 (May 5, 2020), https://www.wuwm.com/sites/wuwm/files/202005/milwaukee_county_covid-19_election_report_-_final_v3.pdf.

[10] Chad D. Cotti et al., *The Relationship Between In-Person Voting, Consolidated Polling Locations, and Absentee Voting on COVID-19: Evidence From the Wisconsin Primary*, Working Paper 27187, NAT'L BUREAU OF ECON. RESEARCH (May 2020), available at https://www.nber.org/papers/w27187.pdf.

38.     Absentee voting represents the best option for most Minnesota voters to participate safely in elections during the COVID-19 pandemic. Defendant Simon himself has recognized this reality, saying in a recent statement: "To slow the spread of COVID-19 we need to reduce large gatherings, including at polling places. I'm challenging all eligible Minnesota voters to cast their vote from the safety of their home."[11] This statement accords with guidance from the CDC, which recommends that election officials "[e]ncourage mail-in methods of voting" during the pandemic.[12]

39.     In the 2020 general election, Minnesota voters turned out in record numbers, with over 3.2 million Minnesotans casting ballots. Defendant Simon's office has noted that fewer than half of Minnesota voters voted in-person on Election Day—only about 1.38 million voters voted at a polling place. The remaining approximately 1.9 million voters cast their ballots absentee, either early in-person or by mail.[13]

40.     Like many Minnesota voters, Ms. Latimer Tanniehill and Ms. Bethke voted by absentee ballot in the 2020 elections because they feared contracting and/or spreading COVID-19 if they voted in person.

---

[11] *Sec. Simon Urges Minnesotans to Request Absentee Ballots for 2020 Elections*, OFFICE OF THE MINN. SEC'Y OF STATE (May 13, 2020), https://www.sos.state.mn.us/about-the-office/news-room/sec-simon-urges-minnesotans-to-request-absentee-ballots-for-2020-elections/.

[12] *Recommendations for Election Polling Locations*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (updated March 27, 2020).

[13] *Outstanding Absentee and Mail Ballots in 2020 General Election*, OFFICE OF THE SEC'Y OF STATE OF MINN., https://www.sos.state.mn.us/elections-voting/election-results/2020/2020-general-election-results/outstanding-absentee-and-mail-ballots-in-2020-general-election/ (last visited Dec. 29, 2020).

41.     Many of LWVMN's members similarly depended on absentee voting for effective access to the franchise in 2020, given the unacceptable health risks associated with voting in person during the pandemic.

*Minnesota's Witness Signature Requirement Undermines*
*Access to Voting During the Pandemic*

42.     Unfortunately, Minnesota's existing absentee voting procedures do not provide an adequate solution to the problem of conducting inclusive elections without forcing voters to violate public health recommendations and mandates. Specifically, under normal circumstances, Minnesota law compels each absentee voter to interact in person with a witness who must be a registered Minnesota voter, notary, or other person authorized to administer oaths. See Minn. Stat. § 203B.07, subd. 3; Minn. R. 8210.0500; Minn. R. 8210.0600; Minn. R. 8210.0710; Minn. R. 8210.3000.

43.     Minnesota's absentee voting procedure means that voters who do not live with another registered Minnesota voter or a person authorized to give oaths face a choice: they can vote in the upcoming elections, or they can comply with social distancing best practices to avoid contracting or spreading COVID-19. They cannot reasonably do both.

44.     Each absentee voter in Minnesota receives an envelope on which a blank certificate is printed ("Signature Envelope"). To fill out the certificate, the voter must (1) provide her Minnesota driver's license number, state identification number, or the last four digits of her Social Security number, or indicate that she does not have any of these numbers, and (2) sign a sworn statement that the voter meets all legal requirements to cast this ballot. Minn. Stat. § 203B.07, subd. 3; Minn. R. 8210.0500; Minn. R. 8210.3000.

45.     The certificate on the Signature Envelope also contains a statement that must be signed by a witness. In addition to signing, the witness must write either her Minnesota street

address or her title indicating that she is a notary or other official authorized to administer oaths. If the witness is a notary, she must also affix her notary stamp. See Minn. R. 8210.0600, subp. 1a; Minn. R. 8210.3000, subp. 4b.

46.     The witness statement requires the witness to certify that at least four conditions were met.

47.     First, the witness certifies that "the voter showed me the blank ballots before voting." Minn. R. 8210.0600, subp. 1a; Minn. R. 8210.3000, subp. 4b.

48.     Second, the witness certifies that "the voter marked the ballots in private or, if physically unable to mark the ballots, the ballots were marked as directed by the voter." Minn. R. 8210.0600, subp. 1a; Minn. R. 8210.3000, subp. 4b.

49.     Third, the witness certifies that "the voter enclosed and sealed the ballots in the ballot envelope." Minn. R. 8210.0600, subp. 1a; Minn. R. 8210.3000, subp. 4b.

50.     Fourth, the witness certifies, "I am or have been registered to vote in Minnesota, or am a notary, or am authorized to give oaths." Minn. R. 8210.0600; Minn. R. 8210.3000, subp. 4b. Although this form certificate language promulgated by the Secretary of State is ambiguous as to whether a former registered Minnesota voter qualifies as a witness, the statute establishing the witness requirement specifies that the witness, if not a notary or other person authorized to administer oaths, must be "a person who is registered to vote in Minnesota." Minn. Stat. § 203B.07, subd. 3 (emphasis added).

51.     Additionally, if the voter is not yet registered to vote and is submitting a voter registration application with an absentee ballot, the witness must certify that "the voter registered to vote by filling out and enclosing a voter registration application in this envelope" and that the

16

voter provided appropriate proof of residence. Minn. R. 8210.0600, supb. 1a; see also Minn. Stat. § 203B.07, subd. 3.

52.     A true and correct copy of the Secretary of State's sample Signature Envelope for registered absentee voters is attached to this Amended Complaint as Exhibit 1. A true and correct copy of the Secretary of State's sample Signature Envelope for non-registered absentee voters is attached to this Amended Complaint as Exhibit 2. A true and correct copy of the Secretary of State's sample Signature Envelope for mail elections is attached to this Amended Complaint as Exhibit 3.

53.     In addition to receiving a Signature Envelope with a form certificate, each absentee voter receives printed instructions. The form instructions, promulgated by the Secretary of State, reiterate that a witness must sign the certificate, affix a notary stamp if applicable, and provide a Minnesota street address or official title. Minn. R. 8210.0500; Minn. R. 8210.3000, subp. 4a.

54.     A true and correct copy of the Secretary of State's form instructions for registered absentee voters is attached to this Amended Complaint as Exhibit 4. A true and correct copy of the Secretary of State's form instructions for non-registered absentee voters is attached to this Amended Complaint as Exhibit 5. A true and correct copy of the Secretary of State's form instructions for voters in mail elections is attached to this Amended Complaint as Exhibit 6.

55.     After a voter submits an absentee ballot, the local ballot board determines, inter alia, whether "the certificate has been completed as prescribed in the directions" provided to the voter. Minn. Stat. § 203B.121, subd. 2(b)(2); see also Minn. Stat. § 204B.45, subd. 2 (clarifying that "the provisions of the Minnesota Election Law governing deposit and counting of ballots" generally apply in mail elections, and "[t]he mail and absentee ballots for a precinct must be counted together"). If the certificate is not completed as prescribed by the directions—for example,

if the witness signature is missing—the ballot is rejected, and the voter is notified of the rejection. Minn. Stat. § 203B.121, subd. 2.

56.     Because of the required signed witness statement, an absentee voter in Minnesota must have a witness physically present while marking and sealing the ballot.

57.     It is difficult or impossible for the voter and witness to maintain a constant distance of at least six feet between them throughout the voting process. Moreover, the voter and witness must touch the same Signature Envelope in order to sign the certificate.

58.     The voter-witness interaction required by Minnesota's current absentee voting procedure constitutes a violation of recommended social distancing and creates a substantial risk of COVID-19 transmission, unless the voter and witness already live together.

59.     To give a conservative estimate, there are likely hundreds of thousands of registered Minnesota voters who do not live with another registered voter or a person authorized to give oaths.

60.     According to 2018 data from the U.S. Census Bureau's Current Population Survey, about 26 percent of voting-age Minnesota residents, and about 37 percent of those over age 65, live alone.[14] Minnesota has almost 3.4 million registered voters.[15] If the rate of living alone is approximately the same for Minnesota's registered-voter population as for its total adult population, then Minnesota has roughly 884,000 registered voters who live alone.

61.     Even among voters who do not live alone, there are many who do not live with another registered Minnesota voter or a person authorized to administer oaths. This includes

---

[14]  Current Population Survey Table Creator, U.S. CENSUS BUREAU, https://www.census.gov/cps/data/cpstablecreator.html (2018).

[15] *Voter Registration Counts*, OFFICE OF THE SEC'Y OF STATE OF MINN., https://www.sos.state.mn.us/election-administration-campaigns/data-maps/voter-registration-counts/ (last visited May 14, 2020).

individuals that live only with minors, live in mixed-citizenship status households, or simply live with others who choose not to register to vote.

62.     LWVMN has numerous members throughout Minnesota who are registered to vote and live alone. Ms. Latimer Tanniehill is one such member.

63.     LWVMN's membership also includes numerous registered Minnesota voters who do not live alone, but do not live with another registered Minnesota voter, a notary, or another individual authorized to administer oaths.

64.     During prior election cycles and in preparation of forthcoming elections, LWVMN has had to divert resources away from its core activities, such as voter registration drives and candidate forums, because of the witness requirement for absentee voting.

65.     In the run up to the 2020 elections, in response to requests from its chapters across the state and its own assessment that the COVID-19 pandemic would cause unprecedented demand for absentee ballots, LWVMN developed a communications campaign to educate voters about the process for voting by absentee ballot. A major purpose of this anticipated communications campaign was to inform voters that absentee voting requires a witness, and that the witness must be a registered Minnesota voter, a notary, or another individual authorized to administer oaths. If not for the witness requirement, LWVMN would not have needed to spend the amount of time, money, and other resources it did prior to the witness signature requirement's suspension on educating voters about the absentee voting process. Absent a continuation of this suspension, LWVMN will be forced to divert resources anew to addressing the witness requirement.

66.     LWVMN also devoted significant time and energy to developing ideas and plans for how voters can have their absentee ballots witnessed as quickly and safely as possible during the pandemic. LWVMN considered developing a program in which voters could request and be

connected with eligible witnesses. However, such a program would be difficult, expensive, and time-consuming to implement. Absent a continuation of the suspension of the witness requirement, LWVMN will reconsider such plans anew. LWVMN has no existing infrastructure for connecting voters with witnesses. Moreover, LWVMN anticipates that individuals who are willing and able to serve as witnesses in such a program will be scarce, since many individuals will reasonably fear contracting or spreading COVID-19 if they serve as witnesses.

67.     During the 2020 election cycle, LWVMN would have had to devote more resources toward educating voters about the witness requirement and helping them obtain witnesses to the extent possible—but for the Ramsey County District Court order suspending the requirement. This increased diversion of resources would have come at the busiest possible time for LWVMN— during the immediate lead-up to a presidential election.

68.     If the witness requirement is reinstated during the pandemic, LWVMN will need to divert resources from existing programs towards educating voters on how to safely secure a witness signature to vote absentee.

69.     Moreover, LWVMN serves as the primary nonprofit facilitating voter registration at naturalization ceremonies in Minnesota, assisting many new American citizens to register in Minnesota each year. Many naturalized citizens live in mixed immigration status households where they may be the only adult citizen (and thus only eligible voter). LWVMN has a strong interest in ensuring that the voters it registers can cast a ballot. But under Minnesota's restrictive eligibility requirements for witnesses to absentee ballots, many such citizens may be unable to do so without violating social distancing protocols.

70.     Even in non-pandemic circumstances, the witness eligibility requirements impose a severe burden on Minnesotans who are out-of-state during the voting period, such as out-of-state

college students like Ms. Marxer, or who are part of mixed citizenship status households like Ms. Bethke. Such voters must undertake burdensome efforts to locate and procure another Minnesota registered voter to witness their ballot, notwithstanding the presence of competent adults who could witness their ballots, but for the fact that they may be registered to vote in another State or are not yet U.S. citizens. Procuring a notary witness on their absentee ballot is similarly burdensome, requiring voters to identify notify services in their area, pay a fee, and often provide photo identification not required to vote in Minnesota.

*Safeguards Other Than Witness Statements Adequately Protect*
*Minnesota Elections From Any Threat of Absentee Ballot Fraud*

71.    Minnesota's witness requirement for absentee voting produces no benefit remotely on par with the severe burden it places on voters during the COVID-19 pandemic. While Minnesota has a legitimate interest in preventing fraud and the appearance of fraud in elections, the marginal effect of the witness requirement as an anti-fraud measure is minimal at best.

72.    Minnesota has no significant history of fraud in absentee voting.

73.    Minnesota's experience with absentee voting is consistent with the experience of other states. Throughout the U.S., absentee voting fraud is rare. A comprehensive nationwide analysis found 491 cases of absentee voting fraud from 2000 to 2012—a miniscule fraction of all absentee ballots cast during that period. Any given American is more likely to be struck by lightning than to cast a fraudulent absentee ballot.[16]

74.    Most states achieve the same result as Minnesota—no meaningful amount of absentee voting fraud—without requiring a signed witness statement. Minnesota is one of only

---

[16] Wendy R. Weiser & Harold Ekeh, *The False Narrative of Voter Fraud*, BRENNAN CTR. FOR JUSTICE (Apr. 10, 2020)  https://www.brennancenter.org/our-work/analysis-opinion/false-narrative-vote-mail-fraud.

twelve states where the normal absentee voting process involves a witness or notary. Two of the other eleven—Virginia and Rhode Island—voluntarily waived or modified their witness requirements for 2020.[17] There is no evidence that states without witness requirements have more absentee voting fraud than states with such requirements.

75.    Minnesota law provides robust safeguards against absentee voting fraud other than requiring voters to obtain a signed witness statement.

76.    Under Minnesota law, it is a felony for any individual to "make or sign any false certificate" required by Minn. Stat. Chapter 203B, the statutory chapter on absentee voting; "make any false or untrue statement in any application for absentee ballots;" "apply for absentee ballots more than once in any election with the intent to cast an illegal ballot;" "exhibit a ballot marked by that individual to any other individual;" violate Chapter 203B "for the purpose of casting an illegal vote in any precinct or for the purpose of aiding another to cast an illegal vote;" "use information from absentee ballot materials or records for purposes unrelated to elections, political activities, or law enforcement;" "provide assistance to an absentee voter" except as specifically authorized by law; "solicit the vote of an absentee voter while in the immediate presence of the voter during the time the individual knows the absentee voter is voting;" or "alter an absentee ballot application after it has been signed by the voter, except by an election official for administrative purposes." Minn. Stat. § 203B.03.

77.    Similarly, any person who votes in Minnesota despite knowing that she is ineligible to vote is guilty of a felony. Minn. Stat. § 201.014.

---

[17] *See* League of Women Voters of Va. v. Va. State Bd. of Elections, No. 6:20-CV-00024, 2020 WL 2158249, at *4 (W.D. Va. May 5, 2020) (citation omitted); R.I. Exec. Order 20-27, Twenty-Fourth Supplemental Emergency Declaration – Further Preparations for a Predominantly Mail Ballot Election (Apr. 17, 2020), https://governor.ri.gov/documents/orders/Executive-Order-20-27.pdf.

78.     A felony in Minnesota is punishable by imprisonment for up to five years, a fine of up to $10,000, or both. Minn. Stat. § 609.03.

79.     In the unlikely event that a fraudulent absentee ballot were submitted despite the harsh criminal penalties for doing so, that ballot would not automatically be counted, but would be subjected to extensive verification procedures along with all other absentee ballots.

80.     Local ballot boards composed of trained officials are responsible for determining whether to accept or reject each absentee ballot. Minn. Stat. § 203B.121; Minn. Stat. § 204B.45, subd. 2. Each absentee ballot must be examined by at least two ballot board members who, subject to limited exceptions, must belong to different major political parties. Minn. Stat. § 203B.121, subd. 2; Minn. Stat. § 204B.45, subd. 2; Minn. R. 8210.2450, subp. 1. Before being accepted for counting, the majority of the ballot board members examining each absentee ballot must determine that the ballot satisfies six independent criteria, five of which have nothing to do with the witness statement. Minn. Stat. § 203B.121, subd. 2.

81.      First, "[t]he voter's name and address on the absentee ballot application must match the voter's name and address on the signature envelope." Minn. R. 8210.2450, subp. 2; see also Minn. Stat. § 203B.121, subd. 2(b)(1).

82.     Second, the ballot board members must determine that "the voter signed the certification on the envelope." Minn. Stat. § 203B.121, subd. 2(b)(2). "A ballot must be rejected .  . . on the basis of the signature if the name signed is clearly a different name than the name of the voter as printed on the signature envelope." Minn. R. 8210.2450, subp. 2.

83.     Third, the ballot board members check whether "the voter's Minnesota driver's license, state identification number, or the last four digits of the voter's Social Security number are the same as a number on the voter's absentee ballot application or voter record." If so, the

ballot may move on to the next verification step; if not, the ballot board members "must compare the signature provided by the applicant to determine whether the ballots were returned by the same person to whom they were transmitted." Minn. Stat. § 203B.121, subd. 2(b)(3); see also Minn. R. 8210.2450, subp. 3.

84.     Fourth, the ballot board members verify that "the voter is registered and eligible to vote in the precinct or has included a properly completed voter registration application in the return envelope." Minn. Stat. § 203B.121, subd. 2(b)(4); see also Minn. R. 8210.2450, subp. 4.

85.     Fifth, the ballot board members check that "the certificate has been completed as prescribed in the directions for casting an absentee ballot." Minn. Stat. § 203B.121, subd. 2(b)(5). This is the only one of the six verification steps that depends on the presence of a witness signature. The witness requirement is deemed satisfied if the witness has signed the required statement and done any one of the following: provided a Minnesota address, provided a title indicating that the witness is eligible to administer oaths, or affixed a notarial stamp. Minn. R. 8210.2450, supb. 5.

86.     Importantly, the ballot board does not check to determine whether the witness's name or address matches an existing voter registration record for purposes of determining whether the ballot in question should be accepted or rejected. See id.

87.     Sixth, it must be confirmed that "the voter has not already voted at that election, either in person or, if it is after the close of business on the seventh day before the election, by absentee ballot." Minn. Stat. § 203B.121, subd. 2(b)(6); see also Minn. R. 8210.2450, subp. 6.

88.     If the majority of ballot board members examining a ballot determine that it fails to satisfy any of these six criteria, the ballot is rejected. Minn. Stat. § 203B.121, subd. 2(c)(1).

89.     Given the rarity of absentee voting fraud, the harsh criminal penalties for committing such fraud, and the existence of numerous verification steps that are at least as likely—

if not more so—to ferret out fraud, it is highly unlikely that any pattern of voter fraud would result if the witness requirement were suspended. This modest accommodation for the COVID-19 pandemic would not cause the Minnesota electorate to lose confidence in the integrity of the absentee voting system.

*Minnesota's Restrictive Qualifications For Absentee*
*Ballot Witnesses Are Burdensome and Needless*

90.     Beyond the particular burdens posed by the witness requirement generally during the COVID-19 crisis, Minnesota's witness eligibility requirements—limiting the pool of qualified witnesses to registered Minnesota voters, notaries, and other individuals authorized to administer oaths—is unduly restrictive.

91.     Among the twelve states that require a witness for absentee voting, Minnesota is the only one that permits its own registered voters to serve as witnesses but generally prohibits other adults from playing that role. Eight of the twelve states allow any adult to witness an absentee ballot, sometimes subject to narrow exceptions such as prohibitions on candidates serving as witnesses.

92.     By requiring that a witness be registered to vote in Minnesota (if not a notary or other person authorized to administer oaths), the state excludes many groups of potential witnesses who are not categorically any less trustworthy than registered Minnesota voters: for example, lawful permanent residents and other non-U.S. citizens; military personnel who are stationed in Minnesota but vote elsewhere; residents of other states, such as students temporarily residing in Minnesota while maintaining their voting domicile elsewhere; and those who simply exercise their constitutional right not to register to vote.

93.     U.S. citizenship is not required to become a notary public. By allowing notaries to witness absentee ballots, Minnesota repudiates any notion that individuals cannot be trusted as

25

witnesses if they do not meet the eligibility criteria for registering to vote in Minnesota (e.g., if they are non-U.S. citizens).

94.     Minnesota's law generally excluding non-Minnesota voters from serving as absentee ballot witnesses does not serve any important state interest. Indeed, in verifying absentee ballots, local ballot boards are not even permitted to reject a ballot on the ground that the witness's name, address, or signature fails to match a name, address, or signature contained in the witness's voter registration record. See Minn. R. 8210.2450, subp. 5.

95.     In other words, the ballot-verification process already is effectively indifferent to whether an absentee ballot is witnessed by a registered Minnesota voter. Yet, the state saddles absentee voters—including those who are out-of-state—with the burden of seeking out a registered Minnesota voter, or else finding a notary or other person authorized to administer oaths.

96.     Finding another registered voter who is both willing and qualified to serve as a witness is a significant burden for many Minnesota voters. This includes voters who do not live with another registered Minnesota voter—including those who live alone or live in mixed immigration status households—and are practicing social distancing during the COVID-19 pandemic. It also includes voters who temporarily live away from Minnesota, such as students attending college out of state. Indeed, a major reason that voters choose to cast absentee ballots is because they are out of the state on Election Day. For those voters, this requirement is very burdensome.

97.     In past election cycles, Minnesotans living out of state have resorted to posting on social media, seeking to meet strangers in their vicinity who are fellow Minnesota voters and can witness absentee ballots.

98.    For voters who cannot find another Minnesota voter to witness an absentee ballot, the option to seek out a notary or other person authorized to administer oaths is also burdensome. Notaries typically charge for their services. Notaries also typically require presentation of photo identification not required to vote in Minnesota. Moreover, simply finding a notary or other person authorized to administer oaths is difficult, especially for voters residing in certain rural areas or who have limited access to transportation services. These difficulties are only exacerbated by the COVID-19 pandemic.

99.    Even before the pandemic, the requirement to have each absentee ballot witnessed by a registered Minnesota voter, a notary, or another person authorized to administer oaths has prevented a significant number of Minnesotans from casting absentee ballots and having those ballots counted. In the 2018 election, 1,336 ballots were rejected in Minnesota for failure to comply with the state's witness requirement, according to data from the Election Administration and Voting Survey conducted by the U.S. Election Assistance Commission.[18] This number is likely dwarfed by the unknown number of Minnesotans who never returned absentee ballots in 2018 because it was not reasonably possible for them to find a qualified witness.

100.    This requirement proved burdensome for Plaintiff Isabel Bethke, who recently moved to Minnesota with her husband, a German national who does not have U.S. citizenship. Due to an apparent error with her initial voter registration, Ms. Bethke was required to obtain a witness signature to confirm her voter registration before voting absentee, notwithstanding the suspension of the witness requirement for absentee ballots by the Ramsey County District Court. Ms. Bethke's husband was not able to witness her absentee ballot for the 2020 general election, so

---

[18] Data available at https://www.eac.gov/research-and-data/datasets-codebooks-and-surveys.

she had to make repeated, high-risk efforts to seek out a neighbor whom she did not know during the peak of the COVID-19 pandemic to be able to cast her absentee ballot in November.

101.    Likewise, Plaintiff Malea Marxer, who turned eighteen earlier in 2020 and was attending college out of state at Gonzaga University in Spokane, Washington during the 2020 general election did not have an eligible witness sign the voter registration application that accompanied her absentee ballot because she thought the witness requirement was suspended. Like Ms. Bethke, Ms. Marxer was required to provide a witness signature with her ballot because she was registering to vote as a first-time voter. As a result, the State rejected her absentee ballot and she was not able to cast a vote in the 2020 general election.

102.    Numerous members of LWVMN—including some who live or have lived temporarily outside of Minnesota—have faced significant challenges finding witnesses for their absentee ballots because of Minnesota's restrictions on who may serve as a witness.

103.    During the COVID-19 pandemic, the number of LWVMN voters experiencing this burden—and the magnitude of the burden on each such voter—will substantially increase. LWVMN expects that it will need to divert resources away from its core activities to educate voters about the qualifications for witnesses, and to help voters connect with qualified witnesses to the extent possible.

## CAUSES OF ACTION

### Count I: Undue Burden on the Right to Vote in
### Violation of the First and Fourteenth Amendments
### As Applied to Elections During the COVID-19 Pandemic
(42 U.S.C. § 1983)

104.    Plaintiffs repeat and reallege paragraphs 1 through 103.

105.    The constitutional right to vote "is of the most fundamental significance under our constitutional structure." Burdick v. Takushi, 504 U.S. 428, 433 (1992). When analyzing the

constitutionality of a restriction on voting, the Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" Id. at 434 (quoting Anderson v. Celebrezze, 460 U.S. 780, 789 (1983)).

106.    As applied to elections conducted during the pendency of the COVID-19 pandemic, Minnesota's witness requirement for absentee voting constitutes a severe burden on the right to vote because it forces voters to choose between exercising the franchise and violating social distancing guidelines, thus exposing themselves, their families, and their communities to a heightened risk of COVID-19.

107.    Minnesota has no interest sufficient to justify maintaining the witness requirement for the 2020 elections. Although preventing fraud and the appearance of fraud is a legitimate state interest, that interest can be fully vindicated without the witness requirement. Absentee voting fraud is rare, in Minnesota and throughout the United States. Minnesota already has robust safeguards unrelated to the witness requirement, including a multi-step ballot verification process that includes matching personally identifying numbers and other information and also imposes steep criminal penalties for fraud. Any interest the state has in its witness signature requirement is too slight to justify the severe burden imposed by applying the requirement during the COVID-19 pandemic.

108.    The witness requirement therefore constitutes an unconstitutional burden on the right to vote under the First and Fourteenth Amendments, as applied to voters for the duration of the pandemic.

**Count II: Undue Burden on the Right to Vote**
**Through Unduly Restrictive Witness Qualifications**
**in Violation of the First and Fourteenth Amendments**
(42 U.S.C. § 1983)

109.　　Plaintiffs repeat and reallege Paragraphs 1 through 108.

110.　　Under Minnesota law, only a registered Minnesota voter, a notary public, or another individual authorized to administer oaths may serve as a witness for an absentee ballot.

111.　　Regardless of the public health conditions, these restrictions on who may serve as a witness impose a significant—and in some cases severe—burden on Minnesota voters. Especially for Minnesotans who temporarily live out of state, it can be difficult or impossible to find another registered Minnesota voter who is willing and able to serve as a ballot witness.

112.　　If a voter fails to find another registered Minnesota voter, she must seek out a notary or other individual authorized to administer oaths. It may be difficult or impossible to find such an individual. Moreover, if the only witness available is a notary, the voter will ordinarily need to present additional identification and pay a fee to have her Signature Envelope notarized.

113.　　Minnesota derives no appreciable benefit from excluding from the pool of potential witnesses all adults who are not registered Minnesota voters, notaries, or persons authorized to give oaths. Minnesota registered voters are not categorically more trustworthy than other competent adults.

114.　　Minn. Stat. § 203B.07 and Minn. Stat. § 204B.45, together with their implementing regulations, therefore impose an undue burden on the right to vote and violate the First and Fourteenth Amendments, insofar as they prevent Minnesota voters from having their absentee ballots witnessed by competent adults who are not registered Minnesota voters, notaries, or individuals authorized to administer oaths.

### Count III: Denial of Equal Protection
### On Account of Citizenship Status in
### Violation of the Fourteenth Amendment
(42 U.S.C. § 1983)

115.    Plaintiffs repeat and reallege Paragraphs 1 through 114.

116.    Minnesota's qualifications for absentee ballot witnesses discriminate between U.S. citizens and otherwise similarly situated non-U.S. citizens. A U.S. citizen may register to vote in Minnesota (assuming she meets certain other qualifications), Minn. Const. art. VII, § 1, and then may witness absentee ballots. A non-U.S. citizen cannot register to vote, id., and therefore cannot witness absentee ballots unless she becomes a notary or otherwise becomes authorized to administer oaths.

117.    Under the Equal Protection Clause of the Fourteenth Amendment, a state law that discriminates against non-U.S. citizens generally "can be sustained only if it can withstand strict judicial scrutiny. In order to withstand strict scrutiny, the law must advance a compelling state interest by the least restrictive means available." Bernal v. Fainter, 467 U.S. 216, 219 (1984). This general rule is subject to only "a narrow exception": strict scrutiny does not apply when a state bars non-U.S. citizens from serving in "positions intimately related to the process of democratic self-government." Id. at 220. To determine whether this exception applies, the Court must focus its inquiry on whether the position in question is "such that the officeholder would necessarily exercise broad discretionary power over the formulation or execution of public policies importantly affecting the citizen population—power of the sort that a self-governing community could properly entrust only to full-fledged members of that community." Id. at 224.

118.    Serving as a witness for an absentee ballot is not a position intimately related to democratic self-governance. It is a "clerical and ministerial" function. Id. at 225. The Court

therefore must apply strict scrutiny to Minnesota's requirement that a witness, if not a notary or otherwise authorized to administer oaths, be a registered Minnesota voter and thus a U.S. citizen.

119.    This citizenship requirement burdens individuals living in mixed immigration status households and individuals living in immigrant communities overall.

120.    This citizenship requirement does not serve any compelling state interest.

121.    To the extent the citizenship requirement for witnesses (besides notaries and other persons authorized to administer oaths) serves any state interest, it is not the least restrictive means to achieve such interest.

122.    Indeed, the citizenship requirement fails even the rational-basis test. There is no rational reason why Minnesota registered voters are more trustworthy witnesses than other competent adults. Moreover, the verification system for absentee ballots does not even verify that the witness is a Minnesota registered voter. This only further belies the lack of state interest in imposing this requirement.

123.    Minn. Stat. § 203B.07 and Minn. Stat. § 204B.45, together with their implementing regulations, therefore facially violate the Fourteenth Amendment, insofar as they discriminate between U.S. citizens and non-U.S. citizens for purposes of determining who may serve as a witness.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.    Enter a declaratory judgment that Minn. Stat. § 203B.07, Minn. Stat. § 204B.45, and all Minnesota regulations implementing such statutes—insofar as they require voters to obtain a witness signature when completing an absentee ballot or mail ballot, or authorize any official to reject any absentee ballot or mail ballot for failure to obtain the

signature, address, title, or notarial stamp of a witness—violate the First and Fourteenth Amendments, as applied to any election conducted during the COVID-19 pandemic;

2.    Enter preliminary and permanent injunctions directing Defendant, his agents, employees, and successors, and all those persons acting in concert or participation with him to:

> (a) refrain from enforcing any statute or regulation that directly or indirectly requires any voter to obtain a witness signature in order cast an absentee ballot or mail ballot, and have such ballot counted, in any election conducted during the COVID-19 pandemic,

> (b) direct all local officials in Minnesota not to reject any absentee ballot or mail ballot for failure to obtain the signature, address, title, or notary stamp of a witness for any election held during the COVID-19 pandemic, and

> (c)  temporarily modify all form printed materials (including but not limited to envelopes and instructions) and/or create new form printed materials, to the extent necessary to avoid explicitly or implicitly instructing any voter to interact in person with any witness for the purpose of casting an absentee ballot or mail ballot in any election held during the COVID-19 pandemic;

3.    Enter a declaratory judgment that Minn. Stat. § 203B.07, Minn. Stat. § 204B.45, and all Minnesota regulations implementing such statutes—insofar as they prevent competent adults who are not registered Minnesota voters, notaries, or individuals authorized to administer oaths from serving as witnesses for absentee or mail ballots— facially violate the First and Fourteenth Amendments;

4.     Enter a declaratory judgment that Minn. Stat. § 203B.07, Minn. Stat. § 204B.45, and all Minnesota regulations implementing such statutes—insofar as they discriminate between U.S. citizens and non-U.S. citizens for purposes of determining who may serve as a witness—facially violate the Equal Protection Clause of the Fourteenth Amendment;

5.     Enter preliminary and permanent injunctions directing Defendant, his agents, employees, and successors, and all those persons acting in concert or participation with him to:

> (a) refrain from enforcing any statute or regulation to the extent it would prevent competent adults who are not registered Minnesota voters, notaries, or individuals authorized to administer oaths from serving as witnesses for absentee or mail ballots,

> (b) direct all local officials in Minnesota not to reject any absentee ballot or mail ballot on the ground that the witness is not a registered Minnesota voter, notary, or individual authorized to administer oaths, and

> (c) modify form printed materials (including but not limited to envelopes and instructions) and/or create new form printed materials, to the extent necessary to inform voters that any competent adult may serve as a witness;

6.     Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action, and

7.     Grant such other relief as the Court may deem just and proper.

Date: December 30, 2020          Respectfully submitted,

/s/ Julia Dayton Klein

**LATHROP GPM LLP**
Julia Dayton Klein (MN Bar #0319181)

Amy Erickson (MN Bar #0399214)
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Julia.DaytonKlein@lathropgpm.com
Amy.Erickson@lathropgpm.com
(612) 632-3153
(612) 632-3470

**CAMPAIGN LEGAL CENTER**
Danielle Lang*
Jonathan Diaz*
Caleb Jackson**
Mark Gaber*
1101 14th Street NW, Suite 400
Washington, DC 20005
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
cjackson@campaignlegalcenter.org
mgaber@campaignlegalcenter.org
(202) 736-2200

*Admitted *pro hac vice*
** Application for admission *pro hac vice* forthcoming